OPINION OF THE COURT
Sheldon S. Levy, J.
Is a defendant in a criminal case entitled to discover the written report of a polygraph examination administered to a potential witness at the People’s request, even though the results of such a test are not admissible in evidence? Although the scope of pretrial discovery is a recurring topic in the *14 courts of this State and the use of the polygraph is an ever increasing phenomenon, the instant question appears to be one of first impression.
An additional issue presented concerns the treatment at trial of pedigree information obtained from a defendant upon arrest. The People routinely introduce such statements at will, but is it permissible for the defense to do the same? Oddly, no reported case has detailed the answer to this question either.
DISCLOSURE OF POLYGRAPH REPORTS
Defendant, Wade Mondon, charged with killing Ramon Perez by shooting him with a pistol, was indicted for murder in the second degree and related crimes. During jury selection, the Assistant District Attorney informed the court, ex parte, that, at his discretion, polygraph examinations had been given to Juan Rojas, the prosecution’s sole eyewitness, and also to Angel Pagan, an exculpatory witness whom the People did not intend to call. According to the prosecutor, the polygraph operator’s reports included all questions and answers given during the pretest interviews and the actual tests, as well as the examiner’s findings and conclusions. Specifically, in this case, the tester had determined that the exculpatory witness was lying and that the eyewitness might or might not be telling the truth.
The District Attorney thereupon inquired of the court whether disclosure of the reports was necessary in view of the fact that the results could not be introduced in evidence. The court’s research into both the legislative intent embodied in pertinent discovery statutes and the uses usually made of polygraph examinations gave impetus to the present decision.
Polygraph testing is based on the principle that the body’s nervous system responds involuntarily to stressful conditions, including those created when a person consciously tells a lie. During a polygraph examination, various questions are put to a subject, whose uncontrollable responses are permanently recorded. Initially, the subject is asked innocuous inquiries. Later, important and relevant questions are posed. A qualified technician, by comparing the subject’s reactions to these interrogatories, can determine when a lie has been told (see, Note, The Emergence of the Polygraph at Trial, 73 Colum L Rev 1120, 1121-1122 [1973]; Note, Pinocchio’s New Nose, 48 NYU L Rev 339, 341-342 [1973]).
However, as the People correctly assert, the findings of *15 polygraph examiners have always been and are still inadmissible in criminal actions in the courts of this State (see, People v Tarsia, 50 NY2d 1, 7; People v Leone, 25 NY2d 511). The reasons for this rule are at least twofold; namely, the belief that "the test’s reliability has not yet been sufficiently established to give it an evidentiary standing in the administration of the criminal law” (People v Tarsia, 67 AD2d 210, 212, affd 50 NY2d 1), and the fear that jurors will be unduly influenced by the reported test conclusions (People v Leone, supra, at p 518).
Nevertheless, the results of polygraph examinations are deemed of enough dependability to be permitted in administrative hearings (May v Shaw, 79 AD2d 970) and also in civil cases, at least by stipulation (Kresnicka v Kresnicka, 48 AD2d 929; Zinn v Bernic Constr., 99 Misc 2d 510). Moreover, the private sector increasingly has employed the polygraph as a means of investigating industrial sabotage and employee criminality.
In addition, and perhaps most importantly in the context of this case, law enforcement officials frequently avail themselves of lie detector testing. District Attorneys often direct such examinations as an aid in determining whether a case is in need of further investigation; whether dismissal proceedings are appropriate; and, when a trial is contemplated, whether a particular person should be called as a witness. In short, whether its results are admissible or not, the polygraph appears to be a sufficiently reliable and valid investigatory tool, and has been praised as such (see, People v Cavagnaro, 88 AD2d 938; Matter of McGinigle v Town of Greenburgh, 59 AD2d 908, 910; People v Vinson, 104 Misc 2d 664, 667-668).
Moreover, it is equally obvious and should not be overlooked that the polygraph can be as useful to the defense as to the prosecution. The subject’s answers to questions may provide investigatory leads that, together with the examiner’s conclusions, will help a defendant to determine whether, in the first instance, to go to trial at all and, if so, who to call as a witness. Furthermore, such data may afford to defense counsel specific source material for the impeachment of potential prosecution witnesses, as well as clues that may aid in the fact-finding process in general.
Therefore, despite widespread judicial reluctance to admit polygraph results in evidence in criminal cases, the polygraph examination qualifies as a "scientific test or experi *16 ment”, at least for purposes of pretrial discovery (CPL 240.20 [1] [c]). When a demand to produce is made pursuant to this section, the prosecutor is obligated to make available "[a]ny written report or document, or portion thereof, concerning a physical or mental examination, or scientific test or experiment, relating to the criminal action or proceeding which was made by, or at the request or direction of a public servant engaged in law enforcement activity”. Because the statute explicitly directs the disclosure of reports, or parts thereof, of scientific tests or experiments made in connection with a case, and not just those that will be introduced in evidence, the inadmissibility of polygraph findings at trial does not exclude them from the law’s pretrial ambit.
Furthermore, the use of the word "any” in the statute in connection with these written reports or documents, obviously encompasses any and all such items, including both the full body of the documents or reports as well as the results and findings.
Nor does there appear any discernible legislative intent to limit even the ordinarily broad meaning of the term "scientific test”. Instead, the statute goes beyond the realm of established and definitive procedures by including within its scope not only written reports and documentation of scientific "tests”, but also of scientific "experiments”.
Moreover, with respect to the contents of the written reports or documentation of such scientific tests or experiments, the mandates of this discovery statute do not distinguish between information secured from a prospective People’s witness or from a person whom the prosecutor has no ultimate intention of calling as a witness. Parenthetically, it should also be noted that the portion of a polygraph report, which contains the statements — even in question and answer form— of a person who will testify for the prosecution at trial, constitutes Rosario material and should be discoverable on that ground alone (see, CPL 240.45).
In addition, where polygraph results are favorable to a defendant’s cause, there appears a further legal basis for a turnover of such information to the defense; namely, that it falls within the spirit, if not the letter, of Brady v Maryland (373 US 83) (see also, United States v Hart, 344 F Supp 522; but see, People v Jones, 44 NY2d 76).
Accordingly, law, logic and simple fairness dictate that whenever a prosecutor takes the time and makes the effort to *17 order a polygraph of a possible witness, the defendant is entitled to a complete report of the examination. Test reports should be given as soon as a proper defense demand is made (see, CPL 240.20 [1] [c]), or as soon thereafter as such reports become available.
Indeed, the disclosure of polygraph reports to the defense would appear to be but one practical application of the "legislative determination that the trial of a criminal charge should not be a sporting event where each side remains ignorant of facts in the hands of the adversary” (People v Copicotto, 50 NY2d 222, 226). In some cases, the reports may be of little value to the defense, but in others disclosure will surely "minimize * * * the tactical and often unfair advantage to one side, and increase * * * to some degree the opportunity for an accurate determination of guilt or innocence” (supra, p 226).
Therefore, and for all of the reasons stated, the trial assistant is directed to disclose forthwith the complete contents of all polygraph examination reports prepared in connection with this case.
ADMISSIBILITY OF PEDIGREE INFORMATION OFFERED BY THE DEFENSE
During the trial of this homicide case, proof was adduced of defendant’s admission to being at the scene of the crime. It was a defense contention, however, that the prosecution’s sole eyewitness was either lying or mistaken when he accused defendant of shooting the deceased. Undecided about testifying in his own behalf, defendant sought to explain his presence by eliciting from a People’s witness the fact that on the date of the incident he lived just two blocks from the crime site.
Specifically, while cross-examining the arresting officer, defense counsel asked what address defendant had given when he was first arrested and was requested to provide pedigree information. The prosecution objected to the question, arguing that the response would be self-serving hearsay. The defense averred that it was not, and that it was admissible, at least, as part of a police department business record. The prosecutor is basically correct, but, in this case, the evidence should be admitted nonetheless.
Initially, it might be supposed that, because a defendant’s address is commonly referred to as pedigree, it is admissible *18 under the pedigree exception to the rule against hearsay evidence. However, the pedigree exclusion to this familiar evidentiary principle must immediately be distinguished from that which permits the People to prove on their direct case various items of a defendant’s pedigree information. Simply put, "pedigree” as an exception to the hearsay rule is not "pedigree information” and should not be confused as such (see, People v Rodriguez, 111 Misc 2d 747, 750; People v Brown, 109 Misc 2d 366, 371).
To qualify as a valid hearsay exception, a declaration as to pedigree must have been made before any controversy; by now a dead declarant; who was related by blood or affinity to the subject person. Moreover, the exception is limited to those cases where pedigree is directly in issue, such as proceedings involving family lineage, descent or succession, and includes only those declarations relating to marriage, birth, death and the dates of such occurrences (see, Richardson, Evidence §§ 319-329 [10th ed]).
It is immediately apparent then that such declarations are not the type of pedigree data that either side would normally seek to offer in evidence in a criminal case. It is equally clear that a defendant’s address, although it is pedigree information, is not pedigree, and is not admissible under the pedigree exception to the rule against hearsay evidence.
In point of fact, pedigree information, which is the present concern of this court, is that which is routinely elicited from a person who has been taken into custody by the police in order to establish identity. Included as pedigree information, in addition to place of residence, are biographical data, such as: name, date and place of birth, citizenship and marital status, and occupation and Social Security number, and descriptive facts, such as race, height, weight and hair and eye color (see, arrest worksheet, form 244-159, New York City Police Department).
As such, the giving of formal Miranda rights before pedigree information is obtained is not required, and a lack thereof is not a bar to admissibility when offered by the People. The want of warnings is excused on the ground that identification questions are neither intended nor likely to furnish information of a criminal nature (People v Rodriquez, 39 NY2d 976, 978; People v Rivera, 26 NY2d 304, 309).
When pedigree information becomes relevant at trial, however, the People can secure its introduction as evidence-in- *19 chief as an admission of a party — an exception to the hearsay rule entirely distinct from the pedigree declaration exception. Of course, pedigree information may also be used by the prosecution, where warranted, for cross-examining a testifying defendant by way of an alleged prior inconsistent or contradictory statement.
However, on behalf of the defense, pedigree information would not be permitted as an admission and, obviously, would not be presented as an inconsistent statement. To qualify as an admission, a statement must be unfavorable to the position of the party who made it (see, Fisch, New York Evidence § 790 [2d ed]). Far from being adverse to a defendant’s interests, pedigree information is frequently self-serving because a defendant usually has had ample opportunity for reflection before providing such data. Indeed, these types of statements are often mistakenly excluded solely as self-serving declarations rather than as hearsay declarations (see, Fisch, New York Evidence § 760 [2d ed]).
Nor does defendant’s pedigree declaration of residence, when sought to be introduced by him, fit within any other known hearsay exception. It cannot be accepted as part of a business entry because the defendant was under no business duty of his own to report when he made the statement (Johnson v Lutz, 253 NY 124). Although the arrest worksheet itself may be qualified as a business record, its pedigree information contents are still hearsay and must evoke a separate exception to render them admissible (see, Zaulich v Thompkins Sq. Holding Co., 10 AD2d 492, 496). Since none is available, the proffered evidence is technically inadmissible.
However, to elevate technicality over practicality would be rascality. The People here acknowledge both that the defendant told the police he lived at the address in question and that he, in fact, lived there at the time of the crime. Furthermore, the defendant could prove this particular type of pedigree information concerning his residence simply by calling as a witness a relative, roommate, neighbor, or building superintendent.
While there is usually no sound reason to depart from time-honored evidentiary principles, with respect to pedigree information that is conceded by the People or readily proven by the defense, the orthodox rules of evidence should be conditionally waived in favor of a commonsense and efficacious approach, which might, for example, include a stipulation as to the desired data.
*20 Accordingly, in this case, in the interests of justice and judicial expediency, the court will permit the proposed cross-examination of the arresting officer in order to elicit the specific pedigree information sought, unless the parties stipulate to the same effect.