**Randall Ray INMAN, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 184S3.

Supreme Court of Indiana.

Aug. 29, 1985.

James R. Cotner, Cotner, Mann & Chapman, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was charged with murder, Ind. Code § 35–42–1–1(1) (Burns 1979 Repl.) and attempted murder, Ind. Code §§ 35–42–1–1(1), 35–41–5–1(a) (Burns 1979 Repl.). Upon the murder charge, he was found guilty, following a trial by jury, of voluntary manslaughter, Ind. Code § 35–42–1–3 (Burns 1979 Repl.) and sentenced to an enhanced term of twenty (20) years imprisonment. Upon the attempted murder charge, he was found not guilty.

This direct appeal presents two issues:

(1) Did the trial court err in denying relief upon Defendant's motion to correct error predicated upon a claim that the State violated a discovery order and presented testimony known by it to be false?

(2) Is the enhanced sentence imposed upon Defendant by the trial court manifestly unreasonable?

It was stipulated that the Defendant fired the shots that killed one Clifford and injured State's Witness Berryman. The

versions of Defendant and Berryman related at trial were at a substantial variance. Berryman testified that he and Clifford were driving in rural Greene County following a night of rather heavy drinking in two separate taverns. He, Berryman, was very sleepy, somewhat drunk and did not know where they were when Clifford said that they were being followed and stopped the vehicle at a landfill site. Almost immediately after the stop, someone whom he did not see approached the vehicle and fired several shots into the passenger compartment and, thereby, wounded both occupants. Berryman had a folding knife with a four-inch blade ensconced in a leather sheath affixed to his belt, having used the knife earlier in the day in connection with a home improvement task he was performing.

Defendant testified that he had met Clifford and Berryman at a tavern and that he knew Clifford but not Berryman, who was Clifford's companion. Defendant and Clifford had some conversation at the tavern and Clifford asked him if he would like to try some marijuana that he had. They agreed to meet at the landfill, and Defendant drove there alone. Shortly after his arrival, Clifford and Berryman arrived in Clifford's truck. After being outside their vehicles briefly, all entered Clifford's truck to smoke. Berryman was very drunk and was acting hostile. When Defendant exposed his wallet, in which he had a large sum of money, for the purpose of extracting some cigarette papers, Berryman grabbed his money. A scuffle followed, and Defendant believed that Berryman was drawing a gun. He managed to get out of the truck and simultaneously draw one of two hand guns that he had on his person and fire several shots into the truck passenger compartment.

Defendant, continuing, testified that Clifford and Berryman sped away in the truck and he gave chase, in order to retrieve his money. He followed them into town and into the parking lot of a hospital. The truck stopped in the parking lot. Clifford was in the driver's seat and Berryman was not visible. Defendant yelled to Clifford that he wanted his money and approached the truck from the front. As he did so, he saw Berryman "pop up," and, again, he believed that Berryman had a gun and that he was going to be shot. He slumped to the ground and took his second gun from his boot. At that time, the truck was driven back and forth in an attempt to run over him. As it passed by him the second time, going backwards, with the driver's door being opened, Defendant fired into the cab. The truck continued its backward movement, struck another vehicle and came to a stop. The Defendant, realizing that he had shot someone, became frightened and fled the scene to decide what he should do. He drove directly to his brother-in-law's home, a few miles away, and had him drive him to the Sheriff's office, where he told the person on duty that he had just been robbed and had shot somebody.

The attempted murder charge arose from Defendant's having shot Berryman at the landfill, and the murder charge arose from his having shot and killed Clifford at the hospital parking lot.

## ISSUE I

■ By his brief, defense counsel charges that the State, at trial, used "testimony known to be false" and withheld "from the Defendant the facts establishing such falsity." The record does not bear out these contentions. In addition, it discloses that the knowledge of the facts of which he complains came to him during the trial. Yet, he interposed no claim of misconduct or deprivation of fair trial rights, did not seek a continuance and took no remedial steps, whatever, but made a serious charge of misconduct and the deliberate denial of due process rights, for the first time, by his motion to correct errors. A party may not await the result of a trial and then assign a claim of error known to him and not claimed when there was yet time for the court to take appropriate action. *See, Solomon v. State* (1982), Ind., 439 N.E.2d 570, 574; *Davis v. State* (1981), Ind., 428 N.E.2d 18, 20.

Notwithstanding the procedural unavailability of this assignment, we address the claim briefly because of our particular sensitivity to any claim that a conviction has been obtained by fraudulent means employed by the State.

It is Counsel's claim that four days prior to trial and three and one-half months subsequent to his having obtained a general and continuing discovery order, the State's key witness, Berryman, was given a polygraph test and failed it. He charges that the State violated the discovery order by not revealing this information to him and further submitted Berryman's crucial testimony to the jury, knowing it to be false.

■ Assuming, arguendo, that the defense was entitled to know the questions propounded upon the test, the answers given and the polygraph operator's assessment of whether such answers were true or false, the record does not compel either the conclusion that the answers were false or, if false, that such fact was known to the State. Neither does it appear the State's failure to provide the information revealed to it by the test hampered the defense, in any event.

The following is the information that Defendant maintains he was entitled to receive in advance of trial:

"POLYGRAPH EXAMINATION REPORT

Privileged and Confidential

TO: Mr. Robert T. Miller AGENCY: Indiana State Police/Bloomington

POLYGRAPH FILE #: 332 DATE: June 10, 1983

PERSON EXAMINED: David Berryman TYPE OF CASE: Homicide

At the request of Det. Sam Kruse on May 27, 1983, a polygraph examination was administered to David Berryman who voluntarily came to the Indiana State Police Post at Jasper, Indiana.

The purpose of the examination was to determine whether or not Mr. Berryman was telling the truth when he stated that he was not withholding information concerning the death of Clifford Inman. [sic]

The facts concerning this case were provided to the polygraphist by Det. Sam Kruse, an investigator for the Indiana State Police.

Before the examination Mr. Berryman signed a form stating that he was taking the test voluntarily.

Mr. Berryman was given four (4) tests. His polygraph test record did contain specific reactions to the relevant questions, indicating an attempt at deception. The following relevant questions were asked during his examination.

1. On the night of Jan. 23rd, did Clifford try to "rip-off" someone? Ans. No
2. Do you know where the $220.00 in Clifford's pants came from? Ans. No
3. From the time you and Clifford left the Oodle Inn until you arrived at the hospital, was anyone else ever inside of Clifford's pickup truck? Ans. No
4. Did you have any conversation with the man who shot you? Ans. No
5. Do you know the reason why you were shot? Ans. No
6. Is any part of your statement to the police a lie? Ans. No

Respectfully,
/s/ F. Joseph Vetter
F. Joseph Vetter
Laboratory Division
Indiana State Police

FJV:pp"

---

(R. 566).

The foregoing does not support the charge that Berryman's answers were false, although they are rendered suspect by the examiner's conclusion that they indicated "an attempt at deception." Assum-

ing that such answers were false, however, except as to answer No. 6, the Defendant already knew the truth of the matters related; and as to answer No. 6, there is nothing in the record from which we can determine the content of the statement.

With regard to the questions and answers one through five, the trial was essentially a "swearing contest" between Defendant and Berryman. Berryman was thoroughly cross-examined, as was the Defendant. Counsel has made no attempt to show what use he would have made of the information revealed by the polygraph examination report. The conclusions of the operator were not admissible; *Smith v. State* (1983), Ind., 455 N.E.2d 346, 352; *Zupp v. State* (1972), 258 Ind. 625, 630–31, 283 N.E.2d 540, 543; hence it could not be used to discredit Berryman's testimony; and the answers given were consistent with his testimony, hence they could not be used to impeach him.

We further observe that the truth or falsity of Berryman's answers aforementioned was relevant only to the charge of attempted murder, a charge upon which Defendant was acquitted. Assuming the falsity of Berryman's answers and the truth of the Defendant's version of the matters so related, it provided no legal justification for his shooting of Clifford.

### ISSUE II

Defendant contends that the sentencing statement demonstrates that the trial court did not consider the mitigating evidence presented, and that in light of this mitigating evidence the sentence is manifestly unreasonable. We do not agree with these arguments.

Our review of this issue is governed by Rule 2 of the Ind. Rules for the Appellate Review of Sentences:

"(1) The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender.

"(2) A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed."

*See generally, Cunningham v. State* (1984), Ind.App., 469 N.E.2d 1, 7–9 and authorities cited therein (*trans. denied*).

The presumptive sentence for a class B felony is ten (10) years imprisonment, which may be reduced by up to four (4) years for mitigating circumstances, or enhanced by up to ten (10) years for aggravating circumstances. Ind.Code § 35–50–2–5 (Burns 1979 Repl.). Reviewing a claim that an enhanced sentence was excessive this Court recently stated:

"Within the parameters of applicable sentencing statutes, the trial court is vested with wide discretion to determine whether the presumptive sentence will be enhanced because of aggravating factors involving the particular defendant or crime, and whether the terms of imprisonment stemming from multiple convictions shall be served concurrently or consecutively. *See* Ind.Code § 35–50–1–2 (Burns 1979 Repl.), 35–38–1–7 (Burns 1984 Cum.Supp., formerly Ind.Code § 35–4.1–4–7, Burns Code Ed. 35–50–1A–7 [1979 Repl.]). Thus a trial court may, upon consideration of relevant facts and information, enhance the basic penalties, impose consecutive sentences, or both.... However, if the trial court enhances the penalties or imposes consecutive sentences, the record must demonstrate that 'the determination was based upon the consideration of the facts of the specific crime, the aggravating and mitigating circumstances involved, and the relation of the sentence imposed to the objectives which will be served by that sentence.'" (Citations omitted.)

*Shippen v. State* (1985), Ind., 477 N.E.2d 903, 905.

We further note that section 35–38–1–7(a) (formerly 35–4.1–4–7(a), Burns Code Ed. 35–50–1A–7(a)) requires trial courts, in determining sentence, to consider the risk that the defendant will commit another

crime, the nature and circumstances of the crime committed and the defendant's prior criminal record, character and condition. Section 35–38–1–7(b)(3) (formerly 35–4.1–4–7(c)(3), Burns Code Ed. 35–50–1A–7(c)(3)) provides that the trial court may consider as an aggravating factor the court's determination that the defendant is in need of correctional or rehabilitative treatment best provided at an institution. Finally, section 35–38–1–7(d) (formerly 35–4.1–4–7(d), Burns Code Ed. 35–50–1A–7(d)) generally provides that the trial court may consider other relevant factors present in the particular case.

In rendering sentence in this case the trial judge entered the following sentencing statement:

"I find that this Defendant perceived a danger that he thought so great that he needed to arm himself with a deadly weapon and did. And then having the choice to avoid the preceived [sic] danger, he did not, but instead intentionally entered into that perceived dangerous situation so armed with a deadly weapon, and having done so the Court finds the Defendant to be a dangerous person. Court also finds that this man, this Defendant, voluntarily submitted himself into what he perceived to be a dangerous situation and having the opportunity to do so, failed to remove himself from that situation and thereafter voluntarily entered into what he perceived to be an even more dangerous situation and armed himself with a second deadly weapon, and having done so, the Court finds that this Defendant is a dangerous person. The Court further finds that this Defendant escaped from what he perceived to be a dangerous and life threatening situation by the use of deadly force himself, by [sic] that he thereafter pursued that dangerous situation while still armed with a deadly weapon and again placed himself in whiat [sic] he perceived to be a dangerous situation which resulted with the use of the deadly weapon and the death of another person, and having done so, the Court finds this Defendant to be a dangerous person.

"The Court having considered all the factors required by statute including the nature and circumstances of the crime and the entire series of events that evenning [sic] that could have been avoided, and finding that the Defendant is a dangerous person finds that Defendant is in need of rehabilitation and the Court finds that these events are aggravating circumstances and the Court orders this Defendant, Randall Ray Inman, sentenced to twenty (20) years in [sic] maximum security facility and the costs of this action assessed against him."

(R. 543–44).

We first note that Defendant's claim the trial court simply did not consider the substantial mitigating evidence presented is belied by the trial judge's statement that he had "considered all the factors required by the statute( )" Moreover, the trial court heard testimony for several days from a series of witnesses concerning Defendant's character, the likelihood that he would commit another crime, and the appropriate sentence. *Cf. Eddings v. Oklahoma* (1982), 455 U.S. 104, 124, 102 S.Ct. 869, 881–82, 71 L.Ed.2d 1, 17 (Burger, C.J., dissenting) (trial court's taking "considerable time" to hear mitigating evidence was a "meaningless exercise" if such evidence were not considered). Although the sentencing statement does not account for mitigating evidence, as we would prefer, *Page v. State* (1981), Ind., 424 N.E.2d 1021, in context, it is apparent that the trial court believed that the mitigating evidence was insufficient to offset the aggravating factors.

Accordingly, we turn to the merits of the contention that the sentence is manifestly unreasonable in light of the mitigating evidence. The evidence presented on Defendant's behalf consisted primarily of character witnesses who had known him at different times, and the fact that Defendant had no prior criminal record. Moreover, although the probation officer who prepared the presentence report originally recommended a sentence of twenty (20) years, during the sentencing hearing she changed

the recommendation to the presumptive 10-year term. Defendant further emphasizes that he turned himself in to the police after the shootings, and assisted them in their investigation.

Defendant on appeal also emphasizes his "remorse" over his actions. However, at least three times during the sentencing hearing Defendant maintained that he had acted in self defense, a claim absolutely not supported by the essentially uncontroverted evidence of the shooting of Clifford in the hospital parking lot. Other evidence supporting the sentence demonstrated that Defendant carried firearms when he went to a bar where he knew trouble previously had occurred. Assuming, as the trial judge apparently did, that Defendant's story of the events at the landfill was correct, he carried *two* firearms into Clifford's truck, from which the trial court properly inferred that Defendant knowingly and while armed entered a situation he perceived was dangerous. Even assuming that Defendant was being "robbed" and justified in shooting at Clifford's truck at the landfill, his subsequent decisions to chase Clifford and fire another series of shots into Clifford's truck in the hospital parking lot, rather than to seek the assistance of law enforcement officers, demonstrates that Defendant's behavior was that of a "dangerous person." Finally, notwithstanding the lateness of the hour when the shooting occurred, we may infer that Defendant's firing a series of shots in a hospital parking lot posed a danger to passing drivers, pedestrians and even persons inside the hospital.

The record supports the trial court's conclusions that Defendant's behavior was that of a "dangerous person," and that he is in need of correctional or rehabilitative treatment best provided at an institution. We cannot say that the 20-year sentence is manifestly unreasonable in light of the circumstances of the crime and character of the Defendant.

The conviction and sentence are affirmed.

GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur.

HUNTER, J., not participating.