617 A.2d 215

**Delmar William PATRICK, III**

v.

**STATE of Maryland.**

**No. 24, Sept. Term, 1992.**

Court of Appeals of Maryland.

Dec. 30, 1992.

Michael R. Bruades, Asst. Public Defender (Stephen E. Harris, Public Defender, and Gina M. Serra, Asst. Public Defender, on brief), Baltimore, for petitioner.

Dian E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

MURPHY, Chief Judge.

This case focuses upon Maryland Rule 4–263(b)(4), which deals with discovery in criminal prosecutions in the circuit courts of the State. The rule provides:

> "(b) **Disclosure Upon Request**—Upon request of the defendant, the State's Attorney shall:
>
> \* \* \* \* \* \*
>
> (4) *Reports or Statements of Experts* —Produce and permit the defendant to inspect and copy all written reports or statements made in connection with the action by each expert consulted by the State, including the results of any physical or mental examination, scientific test, experiment, or comparison, and furnish the defendant with the substance of any such oral report and conclusion."

The question presented is whether non-exculpatory polygraph results of potential witnesses qualify under the rule as "scientific tests" which the defendant is entitled to discover upon request.[1]

## I

In the early morning hours of September 2, 1990, searchers discovered the partially clothed body of thirteen-year-old Earline Renee Brown (Earline) in a wooded area near the subsidized housing project in Port Deposit, Maryland where she lived. The medical examiner determined that Earline had died of strangulation and blunt force injuries to the head and had also suffered cutting and stab wounds to the torso, contusion of the tongue, a cigarette burn on the cheek, and injuries to the vaginal area.

Petitioner Delmar William Patrick, III (Patrick) also lived in the Port Deposit project, about fifty feet from where Earline's body was found. Sixteen-year-old Patrick knew Earline, and he and Earline's step-brother, Steven Goodwin (Goodwin), were best friends. A number of witnesses testified to having seen Patrick and Earline together in the hours prior to the discovery that she was missing. When the Maryland State Police questioned Patrick about the murder, he displayed a detailed knowledge of Earline's injuries. Forensic tests revealed that bloodstains on Patrick's shoes could have come from Earline but not Patrick. Patrick offered the police several different accounts of what had happened.

On September 2, Patrick stated that he had last seen Earline at around 6:30 the previous evening and did not kill her. On September 3, Patrick at first reiterated his statement of the day before, but when a State Trooper later challenged his story, Patrick claimed that one Eric Davis

---

1. Md.Rule 4–263(a)(1) requires the State's Attorney, without the necessity of a request, to furnish to the defendant "[a]ny material or information tending to negate or mitigate the guilt or punishment of the defendant as to the offense charged."

(Davis) was the perpetrator. Patrick admitted to being present when Davis murdered Earline and graphically recounted the scene. Patrick, who had apparently consumed a great deal of alcohol and cocaine on the day of the murder, testified that Davis had given him money and threatened to kill him if he spoke of Davis's involvement. Patrick stated that he had agreed to help Davis move the body.

Later on September 3, when the police informed Patrick that Davis's alternative account of his whereabouts on the day in question was beginning to "check out," Patrick changed his story and admitted that Davis was not the murderer. Patrick claimed that he had only seen the body and did not know who had killed Earline. The police subsequently arrested Patrick.

On September 19, after the Grand Jury for Cecil County charged Patrick with Earline's murder, Patrick told the police that in fact he had seen the murder and that Goodwin was the killer.

On December 4, Patrick was charged in a criminal information with attempted first and second degree rape and attempted first and second degree sexual offense. These charges were consolidated with the murder charge, and Patrick was tried before a jury in the Circuit Court for Cecil County on March 18–27, 1991.

At trial, Patrick testified that he had not seen the murder but had only stumbled upon the body in the woods behind his house. He testified that he had been "too scared" to tell anyone what he had seen. On cross-examination, Patrick admitted that he had lied in attempting to blame the homicide on Davis.

During the trial, Patrick moved to compel disclosure of the results of polygraph tests conducted by police experts with respect to all persons "polygraphed in relation to this case." Patrick told the court that the State had not responded to his pretrial motions to disclose the results of these tests. At this point, the court indicated that polygraph results were not discoverable because they could not

be used in evidence. In response, Patrick maintained that he was entitled to all exculpatory information without regard to whether it was admissible in evidence. He expressed the belief that polygraph tests of witnesses would indicate "deception"; and that he could conduct his own investigation and interrogate these witnesses by asking questions "independent and separate of the polygraph." At a conference in chambers, Patrick told the court that he wanted "a copy of the [polygraph] tracings that were made, the statements that were given at the time, the questions that were asked him." He claimed an "absolute right to all examinations by experts" without regard to whether the experts' testimony was admissible in court.

Patrick advised the court that he would not use the fact of a polygraph at trial or elicit any testimony concerning the polygraph. Rather, he said, he sought the polygraph results in order to obtain leads to exculpatory information. When the court questioned whether the State had provided Patrick with everything that was exculpatory based on the polygraph results, the State answered that Patrick had been furnished with "complete police reports" but not polygraph reports. Patrick made clear to the court that he wanted "the polygraph results," which included those of Eric Davis, Steven Goodwin, and Patrick's brother, Dwayne. The court denied Patrick's motion for disclosure.

The court instructed the jury, *inter alia,* to disregard the lesser counts if it found Patrick guilty of either premeditated murder or felony murder. The jury convicted Patrick of felony murder. On May 8, the court sentenced Patrick to life imprisonment without the possibility of parole. On appeal, the Court of Special Appeals affirmed the judgment. *Patrick v. State,* 90 Md.App. 475, 601 A.2d 1133 (1992). We granted certiorari to consider the significant question raised in this case.

## II

Patrick contends that the Court of Special Appeals erred in affirming the circuit court's refusal to permit discovery

of all the State's polygraph records relating to his case.[2] He claims that the plain language of Rule 4–263(b)(4) compels the conclusion that polygraph-related reports of police experts are discoverable under the rule as "scientific tests." Patrick argues that nothing in the rule suggests that the admissibility *vel non* of evidence is necessarily dispositive of its discoverability. He says that the purpose of discovery under Maryland law is "investigative" and that polygraph reports may well provide guidance to the defense in its preparation for trial, even though the actual conclusion of the polygraph examination may be inadmissible. In this regard, Patrick maintains that a central purpose of pretrial discovery is to provide leads which, properly pursued, may result in the location of admissible exculpatory evidence. In other words, it is Patrick's position that the polygraph results, even if non-exculpatory, may in some manner materially assist him in the preparation of his defense, and that Rule 4–263(b)(4)'s mandated disclosure of "scientific tests" was intended to secure this benefit.

The State argues that polygraph results are of such questionable reliability as to be inadmissible in evidence and thus are not "scientific tests" within the contemplation of Rule 4–263(b)(4). The State acknowledges that the rule permits relatively expansive discovery in criminal cases in order to prevent unfair surprise and provide time for preparation of a full and adequate defense. It suggests that subsection (b)(4) of Rule 4–263, with respect to the "reports or statements" of experts, is designed to permit the defendant a fair opportunity to prepare to rebut any expert evidence that may be offered against the defendant at trial.

---

**2.** The polygraph, colloquially known as the "lie detector" test, is a device which purports to gauge a subject's truthfulness. A polygraph machine measures changes in an examinee's blood pressure, pulse, respiration, galvanic skin resistance, and/or muscular activity in response to an examiner's questions. Because its reliability has not been sufficiently established, courts have nearly universally held polygraph evidence to be generally inadmissible at trial. *See* Annot., 23 A.L.R.2d 1306 (1952, Cum.Supp.1992); 29 Am.Jur.2d *Evidence* § 831 (1967, Cum.Supp.1992).

This purpose would not be served, according to the State, where polygraph results are sought because they are inadmissible in evidence. Were we to require that polygraph materials be disclosed under the rule, the State says we would necessarily provide defendants with back-door access to witnesses' statements, a result at variance with the rule and our opinion in *Carr v. State*, 284 Md. 455, 397 A.2d 606 (1979). In addition, the State urges that disclosure of polygraph evidence may generate serious problems of confidentiality, providing the defendant with material indicating possible past misconduct by the tested individual in matters having no bearing on the crime being investigated. The State maintains that Patrick is using the "scientific test" provision of the rule to seek, in effect, an investigatory police report which is unavailable to a defendant in a criminal case, citing *Faulk v. State's Attorney for Harford Co.*, 299 Md. 493, 508–11, 474 A.2d 880 (1984).

### III

Maryland stands firmly among the vast majority of jurisdictions that have decided that polygraph results are inadmissible as evidence. *State v. Hawkins*, 326 Md. 270, 275, 604 A.2d 489 (1992); *Bohnert v. State*, 312 Md. 266, 278, 539 A.2d 657 (1988); *Johnson v. State*, 303 Md. 487, 513, 495 A.2d 1 (1985). We have also said that the twin objectives of Maryland's criminal discovery rules are to assist the defendant in preparing his defense and to protect the accused from unfair surprise. *See Carr v. State, supra*, 284 Md. at 467, 397 A.2d 606 and *Mayson v. State*, 238 Md. 283, 287, 208 A.2d 599 (1965) (discussing Maryland Rule 728, a precursor to Rule 4–263); *see also Brown v. State*, 85 Md.App. 523, 528–29, 584 A.2d 164 (1991).

As to the proper interpretation of Rule 4–263(b)(4), Judge Alpert observed for the Court of Special Appeals in *Patrick, supra*, 90 Md.App. at 492, 601 A.2d 1133, that nothing in the history of the rule, or its immediate precursor, Rule 741(b)(4), which became effective on July 1, 1977, provided any insight into the intended meaning and reach of the term

"scientific test." That term was used for the first time in Maryland Rule 741(b)(4); that rule contained language similar but not identical to Rule 4–263(b)(4).[3] We agree with the intermediate appellate court that the content of Maryland Rule 4–263(b)(4) sheds no direct light on whether a polygraph examination of a potential witness by a state expert constitutes a "scientific test" under the rule.

It is, however, implicit in the substance of the rule that its purpose is to afford the defendant a fair opportunity to discover the "reports and statements" of experts consulted by the State, including the results, *inter alia*, of any "scientific test" of assistance to the defendant in preparing his defense. Neither Rule 4–263(b)(4) nor Rule 741(b)(4) requires, as a condition precedent to discovery, that the defendant show that the *"item sought may be material to the preparation of his defense and that the request is reasonable."* The italicized quoted language appeared in an earlier version of the rule, *i.e.,* Rule 728, which became effective on January 1, 1962; that language was not, however, included in the later versions of the rule. Thus, since polygraph reports are undoubtedly the reports of State experts and may assist the defendant, at least in determining which strategies of defense may not be productive, the spirit of Rule 4–263(b)(4), apart from the language of scientific tests, suggests that polygraph results are discoverable by defendants.

Before our adoption of former Rule 741(b)(4) and its successor, Rule 4–263(b)(4), § 2.1(a)(iv) of the American Bar Association's Standards for Criminal Justice Relating to

---

3. Rule 741(b)(4) required the prosecutor to

"[p]roduce and permit the defendant to inspect and copy all written reports or statements made in connection with the particular case by each expert consulted by the State, including the results of any physical or mental examination, scientific test, experiment or comparison, and furnish the defendant with the substance of any oral report and conclusion made in connection with the particular case by each expert consulted by the State, including the results of any physical or mental examination, scientific test, experiment or comparison."

Discovery and Procedure Before Trial, approved in 1970, recommended that, in furtherance of the State's constitutionally mandated disclosure obligation under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), prosecutors should disclose "any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of *scientific tests,* experiments or comparisons." (Emphasis supplied.) The commentary accompanying this standard, at 67–68, sets forth various types of reports of experts that would be discoverable under the standard, namely, autopsy reports, reports of medical examinations of victims, of any psychiatric examination of the accused, of chemical analyses, of blood tests, of handwriting and fingerprint comparisons, of ballistics tests and the like. As to polygraph examinations, the commentary to the standard stated that "[i]n light of the present law the Committee takes no position on polygraph test results." [4]

Two federal courts have held that polygraph results are not "scientific tests" under the federal criminal discovery rule. In *United States v. Feola,* 651 F.Supp. 1068, 1146 (S.D.N.Y.1987), *aff'd,* 875 F.2d 857 (2d Cir.), *cert. denied sub nom. Marin v. United States,* 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989), the court held that a polygraph is not a discoverable "scientific test" within the contemplation of Federal Rule of Criminal Procedure (Fed. Rule) 16(a)(1)(D). In that case, the defendant sought the results of polygraph examinations administered to all persons con-

---

4. The Committee drew attention to *Ballard v. Superior Court,* 64 Cal.2d 159, 49 Cal.Rptr. 302, 410 P.2d 838 (1966) (en banc). That criminal case did not involve a pretrial discovery rule pertaining to disclosure of scientific tests, as in the case before us. The Supreme Court of California there affirmed a lower court ruling denying the defendant's request for the results of a polygraph examination of a potential witness in a criminal case. In so acting, the court said: "[W]e cannot conceive of [the] pertinence [of polygraph results] to defendant's case. Not only is evidence of polygraph tests inadmissible, the results of the test[s] would neither lead to any additional evidence or aid petitioner in preparation for trial." Cal.Rptr. at 309, 410 P.2d at 845.

nected with the Government's investigation of the case. The federal rule provided that, upon request of a defendant, the Government shall disclose the results or reports of, *inter alia,* "scientific tests" within the Government's control. Unlike Rule 4–263(b)(4), the federal rule conditions the disclosure requirement upon a showing that the results of the tests "are material to the preparation of the defense and intended for use by the Government as evidence in-chief at the trial." In denying the motion to disclose, the court said that polygraph information did not constitute a "scientific test" under the rule in that "its reliability has not been sufficiently established in the scientific community." In accord with the holding in *Feola* is *United States v. Recognition Equip., Inc.,* 711 F.Supp. 1, 15 (D.D.C.1989).

Cases in other jurisdictions where the results of non-exculpatory polygraph examinations were sought by the defendant in a criminal case have concluded that they are not discoverable. *See, e.g., State v. McGee,* 91 Ariz. 101, 370 P.2d 261 (1962); *Ballard v. Superior Ct., supra; State v. Winsett,* 57 Del. 344, 200 A.2d 237 (1964); *Nations v. State,* 234 Ga. 709, 217 S.E.2d 287 (1975); *Inman v. State,* 482 N.E.2d 451, 454 (Ind.1985); *Zupp v. State,* 258 Ind. 625, 283 N.E.2d 540, 543 (1972); *State v. Greer,* 616 S.W.2d 82, 85 (Mo.Ct.App.1981); *Commonwealth v. Gee,* 467 Pa. 123, 354 A.2d 875 (1976); *Commonwealth v. Aye,* 275 Pa.Super. 369, 418 A.2d 767 (1980); *State v. Gum,* 172 W.Va. 534, 309 S.E.2d 32 (1983). None of these cases, however, involved a criminal discovery rule requiring the disclosure by the prosecution of results of "scientific tests" conducted by experts for the State. Rather, these decisions appear to be grounded on the proposition, first that polygraph reports are not discoverable because they are not admissible in evidence at trial, and second that they do not lead to any admissible evidence useful to the defense.

A contrary result was reached by a nisi prius court in New York City. In *People v. Mondon,* 129 Misc.2d 13, 492 N.Y.S.2d 344 (Sup.1985), the court held polygraph reports to be discoverable by defendants in criminal cases, even

though such results were inadmissible in evidence. There, a statute required disclosure of "scientific tests" for purposes of pretrial discovery. Polygraph examinations had been given to two prosecution witnesses, one of whom the polygraph examiner concluded may have lied. In determining that the results of the polygraph examination were discoverable by the defendant, the court stated that the polygraph was a sufficiently reliable and valid investigatory tool to be of aid to the defendant in preparing the defense. It said:

"The subject's answers to questions may provide investigatory leads that, together with the examiner's conclusions, will help a defendant to determine whether, in the first instance, to go to trial at all and, if so, who to call as a witness. Furthermore, such data may afford to defense counsel specific source material for the impeachment of potential prosecution witnesses, as well as clues that may aid in the fact-finding process in general."

*Id.* 492 N.Y.S.2d at 346–347. The court held that the polygraph examination qualifies as a "scientific test" for purposes of pretrial discovery within the ambit of the governing statute. It said that because the New York statute directed the disclosure of reports of scientific tests made in connection with a case, and not just those admissible in evidence, the inadmissibility of polygraph findings at trial did not exclude them from pretrial discovery. Finally, the court held:

"Accordingly, law, logic and simple fairness dictate that whenever a prosecutor takes the time and makes the effort to order a polygraph of a possible witness, the defendant is entitled to a complete report of the examination."

*Id.* at 347.

The Supreme Court of Arkansas, quoting extensively from the rationale outlined in *Mondon,* held that a polygraph examination of a defendant qualified under that state's criminal discovery rule as a "scientific test" without the need or necessity for a prior in-camera proceeding.

*Yates v. State,* 303 Ark. 79, 794 S.W.2d 133 (1990). There, the defendant sought to compel disclosure of polygraph reports made by state experts relating to his own polygraph examination; he claimed that the examination constituted a "scientific test" within the meaning of the rule. The state maintained that the polygraph results were not discoverable as a "scientific test," but rather were its non-discoverable work product. The court said that its pretrial discovery rule making the results of "scientific tests" discoverable represented an extension of the *Brady* mandate permitting the defendant "the opportunity, apart from his own investigation, to challenge conclusions drawn from tests undertaken by the state." 794 S.W.2d at 136. *See also United States v. Piccinonna,* 885 F.2d 1529, 1535 (11th Cir.1989), declaring that a polygraph examination is a scientific test which has "gained increasingly widespread acceptance as a useful and reliable scientific tool."

We note that *Mondon* involved polygraph results of potentially exculpatory witnesses and that *Yates* involved the defendant's own polygraph examination. Maryland Rule 4–263(b)(4) does not, however, distinguish in its discoverability of "scientific tests" between those administered to witnesses or to the accused. Nor does the Maryland rule, unlike its federal counterpart, condition the discovery of "scientific tests" upon their admissibility as evidence, or upon a showing that the results of the tests are material to the preparation of the defense *and* intended for use by the Government as evidence in-chief at the trial. Although non-exculpatory polygraph results may not be a significant source of material for purposes of preparing a defense, it is for defense counsel to determine whether the test results will be of any assistance to the defense, without regard to whether the subject of the examination is a potential witness or the accused.

We therefore conclude that the reports of State experts who have conducted polygraph examinations, whether the results are exculpatory of the accused's guilt or not, constitute discoverable "scientific tests" within the

contemplation of the rule. In so holding, we note that nothing in *Faulk v. State's Attorney for Harford Co.*, *supra*, upon which the State appears to rely, compels the conclusion that a police-conducted polygraph examination is immune from pretrial discovery under Maryland Rule 4–263(b)(4) because it is an investigatory police report. Nor do we find merit in the State's concerns about confidentiality and back-door access to witnesses' statements. Where particular disclosures contained in a polygraph report may involve an examinee's confidences or constitute a threat to the examinee or others, the trial court, under Maryland Rule 4–263(i), may, on motion and for good cause shown, "order that specified disclosures be restricted." *See Warrick v. State*, 302 Md. 162, 170, n. 4, 486 A.2d 189 (1985).

## IV

■ Even though the results of polygraph examinations by a State expert may be discoverable upon the defendant's request as a "scientific test" under Maryland Rule 4–263(b)(4), not every violation of a discovery motion requires that a subsequent judgment of conviction be reversed. As we said in *Warrick v. State, supra*, 302 Md. at 173, 486 A.2d 189, "[w]hether the State did in fact fail to disclose discoverable information and, if so, whether the violation caused any prejudice are inquiries collateral to the trial ... on its merits." We stated further in *Warrick* that if the record demonstrated that there was no discoverable information which was not disclosed, there could have been no violation of the rule.[5] *Id.* at 173–74, 486 A.2d 189. We also said that if the record demonstrated that there was a violation of the rule, but that it was not prejudicial, it would not be the basis for a reversal of the conviction. *Id.* at 174–75, 486 A.2d 189. We therefore remanded the case in *Warrick* for further proceedings under what is now Mary-

---

**5.** The record is not at all clear as to which, if any, of the individuals named by Patrick were actually polygraphed, *i.e.*, Eric Davis, Steven Goodwin, or Patrick's brother, Dwayne.

land Rule 8–604(d), without affirmance or reversal in order to have the record amplified.[6] *Id.* In so acting, we held that, on remand, the burden is upon the State to satisfy the trial court beyond a reasonable doubt that there was no prejudice. *Id.* We said that if the State carries that burden, the conviction will stand and the accused may appeal the determination of no prejudice; on the other hand, if the trial court is unable to conclude beyond a reasonable doubt that the accused was not prejudiced by the discovery violation, then it must award a new trial. *Id.*

Consistent with our disposition in *Warrick*, we shall remand the case to the Circuit Court for Cecil County for a hearing at which the State will be required to produce the polygraph tests, if any, taken during its investigation. Patrick's counsel will be afforded a full opportunity to review the polygraph material and to argue that the non-disclosure was prejudicial to Patrick's defense. Should the trial court decide that failure to disclose the polygraph results was not prejudicial, the judgment of conviction shall stand, in which event Patrick may request further review and briefing of the issue by this Court. If the trial court concludes that Patrick was prejudiced by non-disclosure, and as a consequence was not afforded a fair trial, a new trial must be ordered. *See Warrick v. State*, 326 Md. 696, 713, 607 A.2d 24 (1992); *Zaal v. State*, 326 Md. 54, 81–87, 602 A.2d 1247 (1992).

CASE REMANDED WITHOUT AFFIRMANCE OR REVERSAL TO THE COURT OF SPECIAL APPEALS FOR

---

**6.** This rule provides:

"(1) *Generally.*—If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings, the Court may remand the case to a lower court. In the order remanding a case, the appellate court shall state the purpose for the remand. The order of remand and the opinion upon which the order is based are conclusive as to the points decided. Upon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court."

REMAND TO THE CIRCUIT COURT FOR CECIL COUN-
TY FOR THE PURPOSE OF FURTHER PROCEEDINGS
CONSISTENT WITH THIS OPINION.  COSTS IN THE
CIRCUIT COURT FOR CECIL COUNTY, THE COURT OF
SPECIAL APPEALS, AND IN THIS COURT TO ABIDE
THE RESULT.

RODOWSKY, Judge, dissenting.

I respectfully dissent.  The analysis by the Court of
Special Appeals in *Patrick v. State*, 90 Md.App. 475, 490–97,
601 A.2d 1133 (1992), is correct, in my opinion.

The provision for disclosure by the State upon request of
the accused of non-exculpatory reports or statements of
experts, including the result of any scientific test, came into
the Maryland Rules in the revision of former Chapter 700
(Criminal Causes) on July 1, 1977.  That revision was
prompted by the ABA Standards for Criminal Justice.  I
reject the notion that this Court, the Rules Committee, or
the consultants to that committee ever intended that the
"scientific test" referred to in the criminal discovery rule
should include a lie detector test.

In connection with the revision of former Chapter 700, a
Joint Committee of the Maryland Judicial Conference and
the Maryland State Bar Association was appointed (the
Joint Committee).  It presented to the Rules Committee its
*Report and Recommendations to Implement the Ameri-
can Bar Association's Standards for Criminal Justice*
(1974) (the *Report*).  The Joint Committee commented on
then proposed Maryland Rule 728 which, without material
change as to the issue at hand, became in 1977 former Rule
741.b.4 and which, in turn, was carried forward into present
Rule 4–263(b)(4).  The Joint Committee foresaw that the
proposal would operate as follows:

"[T]he defendant may obtain the results or reports of
physical or mental examinations or of scientific tests,
experiments or comparisons made in connection with the
particular case, including the statements of the experts
who conducted them.  While this item of formal discovery

is new to Maryland, it should not prove disruptive. The State's Attorney already has the duty of disclosing test results that are exculpatory and has no interest in surprising the defense at trial with incriminating test results. Under present practice autopsy reports, ballistics tests and other test results covered by this Rule are generally available to the defense prior to trial. It is not intended that this Rule should affect the specific provisions in Sections 23 and 26 of Article 59 on the time of preparation and filing with the court of reports by the Department of Mental Hygiene on the defendant's competence to stand trial and insanity at the time of the offense."

Joint Committee, *Report, ABA Standards Relating to Discovery and Procedure Before Trial* 26 (1974).

Today's decision goes well beyond the class of reports on autopsies or on ballistics tests. Thus, we now have the incongruous result that the "expert consulted by the State," Rule 4–263(b)(4), includes a person who could not qualify in any case, civil or criminal, for the purpose of giving opinion testimony expressing the result of the "scientific test" in that person's field of purported expertise.

Judge Karwacki has authorized me to state that he joins in the views expressed in this dissent.