No. 85-188

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

STATE OF MONTANA,

        Plaintiff and Appellant,

  -vs-

LLOYD WILSON,

        Defendant and Respondent.

---

APPEAL FROM:  District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable Chan Ettien, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Mike Greely, Attorney General, Helena, Montana
        Ronald Smith, County Attorney, Havre, Montana

    For Respondent:

        Charles E. Petaja, Helena, Montana

---

Submitted on briefs: Aug. 22, 1985

Decided: October 31, 1985

Filed OCT 31 1985

Ethel M. Harrison
_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

On January 14, 1985, defendant Lloyd Wilson filed a motion to suppress evidence found during a search of a Havre, Montana, motel room in which he was residing. Following an evidentiary hearing, the District Court of the Twelfth Judicial District granted defendant's motion. The State appeals.

On September 14, 1984, Alex Tomaskie called the Havre Police Department for the third time in a month to report his 13 year old daughter missing. On the previous two occasions, information relayed to the police by Mr. Tomaskie resulted in the locating of his daughter. On this occasion, Tomaskie informed the police that his daughter had phoned to say she was with a Dana Wilson in a car with "WILSON 2" license plates at a motel and was too intoxicated to come home. Mr. Tomaskie also stated that he could hear a girl giggling in the background during the call. After a previous escapade, Tomaskie's daughter had told her father that Lloyd Wilson provided the alibi by which she was able to run away. However, she was not found with Wilson on either of the previous occasions.

Recognizing the license plate number as that of a car belonging to defendant, Lloyd Wilson, the police went to his home. The car was not there. The police then began searching Havre motels for Wilson's car. It was located by Deputy Mygland at the Cloud 9 Motel at approximately 11:30 p.m., September 14, 1984. Mygland asked the desk clerk if Lloyd Wilson was a guest. The clerk responded that yes, Wilson was in room 208, registered under the name of John Anderson.

2

Deputies Stolen, Roe and Mygland approached room 208. Stolen knocked on the door, but did not identify himself. After a minute or so Wilson answered, opening the door 18 to 24 inches. Deputy Stolen immediately placed his foot across the threshold of the door, preventing it from being closed by Wilson should he attempt to do so. Instead, Wilson stood directly in front of the door opening while talking with Stolen.

Stolen asked if the Tomaskie girl was in the room. Wilson denied knowing the girl and stated that he was alone. The only light in the room was that of a burning candle. However through the crack on the hinged side of the door, Deputy Stolen could see movement in the room which he thought could be a young girl getting dressed. He could also see a pipe lying on a table and smell marijuana and incense burning. Stolen then informed defendant that unless the person in the room came out so that he could see if it was the Tomaskie girl, he would be returning with a warrant. The girl, 16 year old Tamie Kiecker, and Wilson then exited the room. Wilson closed the motel door behind him and it was not reopened until the police obtained a search warrant.

Tamie Kiecker was taken to the police station by Sergeant Harada. Before leaving the scene, however, she told the sergeant that there was marijuana in the room and that it did not belong to her; and that the Tomaskie girl was not in the motel room.

Wilson was also taken to the police station and arrested. Deputy Stolen requested City Judge Ernest Hofmann to issue a search warrant for the motel room, and presented him with the following affidavit:

1) On 091484, at 2153 Hrs. Alex Tomaskie called in and reported [M.T.] a runaway. she was reported to be with a Dana Wilson in a 1975 Chevy Monte Carlo

3

Lic/Wilson 2. [M.T.] is 13 years of age. Her dob is 092470.

2) On 081684, Alex Tomaskie called in and reported [M.T.] as a runaway. On the same date she was located at the Alfred Fredricksons residence at 840 5th st. N. On 082584, Alex Tomaskie called in and reported [M.T.] as a runaway. She was located at Rick Clark residence at Shennum Trailer] Court #7. In both incidents Alex Tomaskie called in a gave us this information as to where [M.T.] was at. In both incidents it proved to be reliable information.

3) On 091484, Alex Tomaskie called in and advised that [M.T.] called him at 2303 and told him that she was at a Motel but was too drunk to come home.

4) While looking for [M.T.] the deputies checked the Lloyd Wilson residence and found the car Wilson 2 not there. The vehicle was located at the Cloud 9 Motel in Havre.

5) On 081684 at 2000 [M.T.] was reported as a runaway by Alex Tomaskie. After she was turned over to her parents on the same date, 2040, she stated to her parents that Lloyd Wilson had helped her runaway.

6) Deputy Mygland talked to the desk clerk, Mark Roseman. Mark Roseman stated that Lloyd Wilson was registered in Room 208 under the assumed name of John Anderson. Deputy Mygland asked Mark Roseman if he knew Lloyd Wilson, and he stated that he has known Lloyd Wilson for some time.

7) Deputies went up and knocked on the door to Room 208, after a long pause Lloyd Wilson answered the door. The deputies observed a girl believed to be under the age of 16. This was determined because of her appearance and actions. It appeared to look as she was getting dressed. This juvenile girl was removed from the room and taken to the Havre Police Department.

8) This applicant smelled what he believed to be Marijuana and Insents. [Incense]

9) Applicant saw a candle burning and what he believed to be some type of pipe on the coffee table. Lloyd Wilson made every effort to conceal the table from the applicants view.

10) The minor removed from the room stated to Deputy Mygland and Sgt. Harada that there was marijuana in the Motel Room. She stated that it did not belong to her.

11) Lloyd Wilson has the reputation in the Havre area as a user of illegal drugs.
[Typographical errors in original.]

4

The City Judge granted the request. The subsequent search uncovered marijuana and other drugs, drug paraphernalia and $921.00 in cash.

Defendant's motion to the District Court requesting supression of that evidence contains numerous allegations, including:

1. The application for a search warrant includes false and misleading information;

2. The facts in the application which allegedly constitute probable cause for issuance of a search warrant were obtained by illegal, unwarranted and nonconsensual intrusion;

3. The application lacks probable cause to support the issuance of a search warrant;

4. The application does not adequately establish the reliability and credibility of informants who provided information regarding the presence of drugs in the motel room and information regarding defendant's reputation.

Over the State's objection that defendant failed to show substantial evidence that the police had used false and misleading information in the affidavit, an evidentiary hearing was held on all grounds. At the request of the State and without objection from defendant, the trial judge also visited the motel room under circumstances allegedly similar to those on the night of the search, stood where Deputy Stolen allegedly stood and saw for himself what Deputy Stolen allegedly saw from the doorway of the room. Thereafter, an order and memorandum were issued granting defendant's motion to suppress. The trial judge found that the information in the affidavit was misleading; the facts stated in the affidavit were obtained from an illegal search; the affidavit failed to establish the credibility of the informants; and

5

the affidavit failed to establish probable cause for the issuance of a search warrant.

In its appeal, the State raises the following issues:

1. Did Hill County law enforcement officers approach defendant's room on a pretext and rely on deliberate falsehoods or reckless misrepresentation of the truth to obtain the search warrant?

2. Did Deputy Stolen conduct a warrantless entry into the defendant's motel room by placing his foot on the threshold of that room and, therefore, conduct an unreasonable search and seizure?

3. Did probable cause exist for issuance of the search warrant?

In State v. Sykes (1983), 663 P.2d 691, 695, 40 St.Rep. 690, 694, this Court adopted the test set forth by the United States Supreme Court in Franks v. Delaware (1978), 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667, 682, for challenging the validity of an affidavit on the basis of deliberate falsehood or reckless disregard for the truth. Initially, "defendant must make a substantial preliminary showing that his rights have been violated." Sykes, 663 P.2d at 695, 40 St.Rep. at 694.

The trial judge found that defendant's affidavit alleging use by the State of false statements in its application for a search warrant constituted a "substantial preliminary showing." Absent a clear abuse of discretion by the trial judge, this Court will not overturn his decision in this matter. Defendant's affidavit alleges, among other things, that the real reason behind the officers' visit to his motel room was to gain entry into his room in order to search for drugs and that when he confronted Deputy Stolen with such an allegation, Stolen replied "we have been

6

watching you." These assertions alone constitute a "substantial preliminary showing" that the State's affidavit was based on deliberate falsehood or reckless disregard for the truth. Therefore, we hold that the trial judge did not err in considering evidence on this issue at the probable cause hearing.

Regarding issues two and three, we find it impossible to rule on the lower court's decision due to the inadequacies of that court's findings.

The trial judge stated "Stolen's action in crossing the threshold and jamming his boot against the door so it could not be closed was a warrantless intrusion for purposes of a search." However, defendant opened the door in response to Stolen's knock. Apparently defendant made no attempt to close the door. Neither, of course, did defendant invite Stolen into his room. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." Katz v. United States (1967), 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582. Unfortunately, the trial judge makes no finding on whether or not defendant knowingly exposed his motel room to the police officer. The trial judge makes no finding regarding whether or not Deputy Stolen intruded beyond any invitation defendant might have extended. Further, there are no findings regarding whether, if Stolen did intrude beyond defendant's invitation, the intrusion had any effect on what Stolen was able to observe in the motel room. In fact, the trial judge made no finding with respect to what exactly Deputy Stolen could observe from the doorway of the motel room, stating instead that "[t]he lighting was so poor that one is led to believe that Deputy Stolen's appraisal contained a good measure of wishful thinking."

7

Therefore, we remand this cause to the District Court for a second evidentiary hearing, after which the trial judge shall make findings of fact and conclusions of law consistent with the above, as well as findings regarding whether or not probable cause existed in Deputy Stolen's affidavit to support issuance of a search warrant.

Finally, we disapprove of the trial court's participation in the recreation of the scene. There is absolutely no way to ensure that the trial judge saw exactly what Deputy Stolen saw on the night of the arrest and search. Visits to the scene should be designed for the trier of fact to view the scene, not for the trier of fact to place himself in the shoes of one of the parties. The trial judge's determination should be based solely on the search warrant application and the evidence presented at the second evidentiary hearing.

Affirmed in part and remanded for a new evidentiary hearing.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

8