807 A.2d 13

**George Wendell SOUTHERN**

**v.**

**STATE of Maryland.**

**No. 109, Sept. Term, 2001.**

Court of Appeals of Maryland.

Sept. 17, 2002.

Martha Weisheit, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Diane E. Keller, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

George Wendell Southern, petitioner, was indicted by a Grand Jury in Prince George's County on two counts of robbery and related offenses due to his alleged participation in the robberies of two 7–Eleven stores on the morning of February 19, 2000. On September 20, 2000, the Circuit Court for Prince George's County denied petitioner's Motion to Suppress. On September 22, 2000, after a jury trial, petitioner was convicted of two counts of robbery and one count of second-degree assault. On November 9, 2000, the Circuit Court imposed a sentence of ten years incarceration without the possibility of parole for the first robbery count [1] and a consecutive ten-year sentence on the second robbery count.

On November 15, 2000, petitioner noted an appeal to the Court of Special Appeals. In that appeal, petitioner argued that at the hearing on his Motion to Suppress and after petitioner challenged the constitutionality of his initial detention, the State failed to put on any evidence to sustain its burden of proving the constitutionality of the stop and, thus, petitioner's motion should have been granted. In a reported opinion, *Southern v. State,* 140 Md.App. 495, 780 A.2d 1228 (2001), the intermediate appellate court, after agreeing that petitioner properly had raised the issue of the constitutionality of the initial stop, held that the State had the burden of establishing the constitutionality of the stop, that the State had not presented evidence sufficient to meet that burden, and that the Circuit Court had not ruled on the issue. Nevertheless, the Court of Special Appeals did not reverse the convic-

---

**1.** The conviction for second-degree assault merged into petitioner's conviction on the first robbery count.

tions, but, instead, ordered that petitioner's convictions were to remain in effect pending further proceedings and remanded the case to the Circuit Court for the purpose of reopening the suppression proceeding to give the State the opportunity to introduce evidence relating to the constitutionality of the stop and for the Circuit Court to then rule on the constitutionality of the stop.

On December 13, 2001, we granted Southern's Petition for Writ of Certiorari and denied the State's Conditional Cross–Petition. *Southern v. State*, 367 Md. 88, 785 A.2d 1292 (2001). Petitioner presents one question for our review:

> "Where the defense challenged the legality of an initial stop at a suppression hearing and the State failed to introduce any evidence on that issue, was it proper for the Court of Special Appeals to order a limited remand at which the State will have a second opportunity to introduce evidence supporting the legality of the stop?"

We answer no to petitioner's question and reverse. We hold that it was improper for the Court of Special Appeals to remand and reopen the suppression proceeding in order to provide the State with a second opportunity to present new evidence on the constitutionality of the initial stop. The Court of Special Appeals should have reversed the convictions and remanded the case to the Circuit Court for a new trial.

## I.  Procedural Facts

### a.  Motion to Suppress

Petitioner filed two one-page omnibus motions, both stating *inter alia* that he "moves to suppress any and all evidence obtained by the State in violation of the defendant's rights as guaranteed by the 4th, 5th, 6th, and 14th Amendments to the Constitution of the United States, and the Maryland Declaration of Rights." [2]

---

**2.** "Omnibus motion" is the term given to a motion that encompasses the mandatory motions that must be filed in the circuit court pursuant to Maryland Rule 4–252(a). They must be filed within a certain period

The Circuit Court for Prince George's County held a hearing on petitioner's motions on September 20, 2000. The Circuit Court addressed the pre-trial motions and asked the State, "[w]ell, which motions are we taking up first?" The prosecutor responded, "I.D., and then the statement." The State then proceeded to call various witnesses to testify about the events on the day of the robberies. The Circuit Court heard evidence relating to the circumstances of the post-apprehension show-up identification and denied petitioner's motion to suppress the identification. In respect to the issue of the validity of petitioner's initial apprehension, the testimony was limited to the following:

"The first to testify was Officer Richard Pippin of the Prince George's County Police. He testified that on February 19th, 2000, he responded to a call regarding a robbery at a 7–11 on Old Branch Avenue. When he arrived, he spoke to a Carolyn Pryor, and approximately 15 minutes later drove her and one other individual several blocks away to Wolverton Avenue. He told her that the police had apprehended a suspect fitting the description of the person who had robbed the 7–11. . . .

"The next witness called by the prosecutor was Corporal Charles Burgess. He stated that he had responded to the report of the robbery and had been involved in the apprehension of a suspect, together with a K–9 officer. . . .

"Officer Monty Burkhalter . . . testified that Corporal Burgess had handed over the Petitioner to him after he was apprehended. . . . Burkhalter stated that at the time the Petitioner was turned over to him, he had already been arrested and was in handcuffs.

"The State's next witness on the identification was Carolyn Pryor. She stated that she had been a customer in the 7–11 on the morning of the robbery, and as she was approaching the cashier, a man came in the door with dark red T-shirt or bandanna covering the lower part of his face.

of time and if not filed within that time period the right to file the motions may be considered waived.

He jumped over the counter and began kicking the cash register, and while he was doing this the bandanna or T-shirt kept falling down. She described this person to the police after the incident, and they took her to another location to see if she could identify a person they had apprehended. When she saw the suspect, she told the police officer, 'That's him.'

"Gail Alexander was called as a defense witness on the motion. She stated that on the morning of the robbery she was getting some coffee at the 7–11 on Old Branch Avenue when she heard noises coming from the area of the cash register. When she looked up, she saw a white male attempting to pull out the cash register drawer and saw that over his face he had a red shirt, which kept falling down. Later after the police were called, she and Ms. Pryor accompanied Officer Pippin to an area where they were holding a suspect. She stated that when they arrived at their destination the suspect was removed from the back seat of the police car and made to stand up and face them. She recalled that at that time 'he was handcuffed with his hands behind him.' Ms. Alexander testified that although she heard Ms. Pryor identify the man as the robber, she (Ms. Alexander) was unable to identify his face. She also told the officers that the man wasn't wearing the same clothes that the robber had worn."

The balance of the evidence proffered at the suppression hearing (as well as most of that discussed next above) was completely unrelated to the events surrounding the apprehension of the petitioner. In its brief to this Court, the State conceded as much, saying: "None of the witnesses called during the suppression hearing described the circumstances of the K–9 tracking or the initial detention of Southern."

The following dialogue then transpired regarding the evidence as to other matters then before the motions hearing judge:

"[DEFENSE COUNSEL]: Your Honor, the State is saying they [have] my client in custody, and there was a stop by a K–9, and obviously the seizure of whatever they

seized from him, and two statements, the statement to Detective Cheeks and the statement to Detective Arscott.

"THE COURT: Okay.

(Pause in the Proceedings)

"[DEFENSE COUNSEL]: Your Honor, we're seeking to suppress the stop and anything that flowed from that. I believe evidence was seized from him when he was stopped by Officer Peton, I can't remember how they—Peton, and his K–9, and Officer Burgess. So anything that was seized from that stop.

"THE COURT: Okay.

"[DEFENSE COUNSEL]: The defendant's statement to Officer Cheeks, which was memorialized in writing allegedly by Mr. Southern and also as it appears by Officer Cheeks. There's also an oral statement that was allegedly given to Corporal Arscott at the hospital. We're moving to suppress that. And there was a search of the vehicle. Officer— responded to the car, and Officer Stuehmeier seized it, and they are alleging my client had custody of that vehicle."

The State then presented testimony regarding petitioner's time in custody, petitioner's statements, and the seizure of a cash register drawer from the automobile petitioner allegedly drove to the stores. There was no evidence *at the suppression hearing* describing the initial detention of petitioner or the reasons, *i.e.,* probable cause supporting that apprehension.

After the State concluded its presentation of testimony on the omnibus motion, the following exchange between the court and counsel occurred:

"THE COURT: Any further evidence?

"[STATE'S ATTORNEY]: No, Your Honor.

"THE COURT: Okay. Anything further?

"[DEFENSE COUNSEL]: 1 will not present any witnesses, Your Honor.

"THE COURT: All right. Are you going to argue, or you want to submit?

"[DEFENSE COUNSEL]: I would like to argue.

"THE COURT: Go ahead and argue. First of all, what are you going to argue about?

"[DEFENSE COUNSEL]: I'm going to re-argue with regard to the search and seizure and the stop, when they stopped the defendant, about the identification, and the statements of Detective Cheeks and—

"THE COURT: Then go ahead and start.

"[DEFENSE COUNSEL]: Okay. Your Honor, with regard to the stop, the defendant should really be the starting point for everything. We really have no evidence. What we have is Officer Burkhalter, who did not participate in the stop of Mr. Southern, who indicated the description that was given was a white male, and he really didn't have anything further than that. I believe it was five-eight to five-ten.

"Other than that, the next thing we know is we have Mr. Southern stopped and witnesses driving by. So I don't think the State has established probable cause—I would therefore like you to suppress the identification based on that."

Petitioner's counsel then argued about the statements and the search of the vehicle; however, during petitioner's argument that the identification should be suppressed because the stop was unconstitutional the trial court interrupted the discussion.

"[DEFENSE COUNSEL]: ... With regard to the search of the vehicle, I don't believe the State satisfied under the rules who the owner is, or who searched it, or where it came from. And for that reason we would ask that—but most importantly, we would ask that the I.D. be suppressed because the stop was—.

"THE COURT: The Court finds that the defendant was identified by a witness as the person who perpetrated the robbery and was arrested as a result of that. He was taken into custody. That a vehicle was recovered in close proximity to the second location of the robbery. That the vehicle belonged to someone other than the defendant, and that

someone gave permission to the police to search it by written consent.

"That the defendant was not detained unduly. That he was advised of his constitutional rights pursuant to *Miranda v. Arizona.* That he waived his constitutional rights pursuant to the same decision. That he gave a statement. That he answered questions and fully cooperated with the police, and this was not after an undue delay.

. . .

"[DEFENSE COUNSEL]: And Your Honor, with regard to the oral statement and identification that flowed from the stop?

"THE COURT: You mean the oral statement when he said: It was my girlfriend's?

"[DEFENSE COUNSEL]: Right.

"THE COURT: The Court finds specifically that was not as the result of any custodial interrogation, that he made that statement when two other police officers were in fairly close proximity but not really in the same location as he was. And that does not run afoul of any 5th or 6th Amendment right because it wasn't a custodial interrogation. It was a statement that was made voluntarily by him, not in response to any question.

"So, quite frankly, I wasn't aware that was your challenge on it. I didn't know that was the subject of your challenge. Because as I heard it, he wasn't answering any questions. So I deny the motion to suppress.

"[DEFENSE COUNSEL]: Thank you, Your Honor."

The suppression proceeding ended and the trial commenced with opening statements.

### b.  The Court of Special Appeals' Ruling

On appeal, petitioner presented several questions for review to the Court of Special Appeals, only one of those questions is now involved in the case *sub judice.* Petitioner asked the intermediate appellate court, "[d]id the State fail to sustain its

burden of proving at the motion to suppress hearing that the appellant's detention was constitutional?" *Southern v. State,* 140 Md.App. 495, 499, 780 A.2d 1228, 1230 (2001).

The Court of Special Appeals held that the trial court erred in failing to rule on the issue of the propriety of the initial stop of petitioner and remanded for the purposes of such a ruling, noting that in its brief to that court the "State admit[ted] that 'virtually no evidence was presented at the suppression hearing regarding the circumstances of [petitioner's] initial stop.' " *Id.* at 504, 780 A.2d at 1234. Then, the Court of Special Appeals stated in its opinion the well settled rule that:

"The State bears the ultimate burden of proving that evidence seized without a warrant should not be suppressed. Nevertheless, it is 'always the burden of the defense to raise the issue of unlawful search and seizure . . . .' The failure to raise a suppression issue before the hearing court amounts to a waiver to seek relief upon appellate review. Moreover, the motion to suppress must be presented with particularity in order to preserve an objection."

*Id.* at 505, 780 A.2d at 1234 (citations omitted); *see Carter v. State,* 367 Md. 447, 788 A.2d 646 (2002).

Before the Court of Special Appeals, the State contended that petitioner had failed to properly challenge the propriety of the initial stop in his motion to suppress. The Court of Special Appeals held that at the suppression hearing defense counsel's comments were sufficient to "articulate[ ] his challenge to the initial stop," and because the suppression court had not ruled on the propriety of the "initial stop" and instead focused on events surrounding the show-up procedure, the Court of Special Appeals ordered a limited remand pursuant to Maryland Rule 8–604(d)(1) [3] "so that the court may rule on the propriety of the initial stop." *Southern,* 140 Md.App. at 505–07, 780 A.2d at 1234–35.

The Court of Special Appeals also opined on whether the State was entitled to introduce new evidence on remand and

---

**3.** Hereafter, references to Rule 8–604 are to Maryland Rule 8–604.

held that the trial court on remand could "hear additional evidence concerning the propriety of the initial stop." *Id.* at 513, 780 A.2d at 1239.

The correctness of the Court of Special Appeals' holding that would allow the State to reopen the suppression proceeding and to present additional evidence on the initial stop, is the issue presented for our resolution.

## II. Discussion

### a. The Right to Remand

The right of an appellate court to remand, in lieu of other methods of disposition, is specifically recognized in Rule 8–604(d). *Davis Sand & Gravel Corp. v. Buckler,* 231 Md. 370, 190 A.2d 531 (1963). Section (d) of this Rule was designed to permit the appellate court, in the interests of justice and judicial expediency, to remand a case for further proceedings instead of entering a final order affirming, reversing, or modifying the judgment from which the appeal was taken. *Eastgate Associates v. Apper,* 276 Md. 698, 350 A.2d 661 (1976).

### b. The Purposes for a (Limited) Remand

Rule 8–604, governing dispositions by Maryland's appellate courts, reads:

"(a) **Generally.** As to each party to an appeal, the Court shall dispose of an appeal in one of the following ways:

(1) dismiss the appeal pursuant to Rule 8–602;

(2) affirm the judgment;

(3) vacate or reverse the judgment;

(4) modify the judgment;

(5) remand the action to a lower court in accordance with section (d) of this Rule; or

(6) an appropriate combination of the above.

. . .

(d) **Remand.** (1) *Generally.* If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings, the Court may remand that case to a lower court. In the order remanding a case, the appellate court shall state the purpose for the remand. The order of remand and the opinion upon which the order is based are conclusive as to the points decided. Upon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court."

■ There are certain times and types of cases where the limited remand is the proper disposition, but Rule 8–604(d) is neither an "antidote" for the errors of the State or of counsel nor a method to correct errors committed during the trial itself. *See Reid v. State,* 305 Md. 9, 501 A.2d 436 (1985); *Comptroller of Treasury v. Panitz,* 267 Md. 296, 297 A.2d 289 (1972); *Earl v. Anchor Pontiac Buick, Inc.,* 246 Md. 653, 229 A.2d 412 (1967).

■ The limited remand is proper in various circumstances, particularly when the purposes of justice will be advanced by permitting further proceedings. *Butler v. State,* 55 Md.App. 409, 462 A.2d 1230 (1983). *See McMillian v. State,* 325 Md. 272, 600 A.2d 430 (1992) (remand was proper where a question was not previously addressed to the trial court because of an error of law); *Bailey v. State,* 303 Md. 650, 496 A.2d 665 (1985) (a limited remand was needed to determine whether a discovery violation prejudiced the defendant); *Warrick v. State,* 302 Md. 162, 486 A.2d 189 (1985) (remand when necessary to answer whether the State properly complied with disclosure provisions for discovery); *Mahammitt v. State,* 299 Md. 82, 472 A.2d 477 (1984) (a remand to determine facts regarding a grant of postponement relating to a statutory speedy trial claim served the interests of justice); *Wiener v. State,* 290 Md. 425, 430 A.2d 588 (1981) (where the issue on

restricted (limited) remand is collateral to and not an integral part of a criminal trial and advances the purposes of justice, remand is proper—in reference to the right to counsel). *But see Lipinski v. State,* 333 Md. 582, 636 A.2d 994 (1994) (the court may remand under 8–604(d) and while the rule may be suitable to correct procedures subsidiary to the criminal trial, it can never be utilized to rectify prejudicial errors committed during the trial itself, here a mistaken definition of the crime charged applied by the trial court at a bench trial); *Gill v. State,* 265 Md. 350, 289 A.2d 575 (1972) (there are times when remand is not to be used, and it is not to be used to determine the issue of voluntariness of a confession which is ultimately a decision for the jury).

■ Both the purpose and application of Rule 8–604(d) support a limited remand in situations such as those discussed *supra,* but that line of case law is unlike the case *sub judice,* where the State failed to meet its burden of proof on a motion to suppress. This is not a case where the State introduced sufficient evidence to meet its burden that the initial stop was constitutional, but the trial court failed to rule on the issue. In its present posture, this is a case where the State failed to meet its burden, yet the trial court did not grant the motion. Rule 8–604 does not afford parties who fail to meet their burdens on issues raised in a completed suppression hearing an opportunity to reopen the suppression proceeding for the taking of additional evidence after the appellate court has held the party has failed to meet its evidentiary burden.

The Court of Special Appeals recognized that it was the State's responsibility to introduce evidence regarding the constitutionality of the stop, not the responsibility of petitioner.

"Defense counsel's statement that she sought to 'suppress the stop' should have put up a red flag for the State, and should have alerted the State that it was necessary to provide evidence concerning the initial stop. Appellant is not required to present evidence concerning the propriety of the initial stop. Once a defendant properly challenges the propriety of the stop, the burden is on the State to present

evidence justifying its actions. *See, e.g., DiPasquale v. State,* 43 Md.App. 574, 578, 406 A.2d 665 (1979) ('Warrant-less Fourth Amendment intrusions are presumptively un-reasonable ... and the burden is allocated to the State of showing adequate justification for the exceptional departure from the Fourth Amendment norm'). We hold that appel-lant did not waive his Fourth Amendment challenge by failing to present evidence concerning the initial stop." *Southern,* 140 Md.App. at 506–07, 780 A.2d at 1235.

The Court of Special Appeals held that the trial court had failed to rule on the constitutionality of the initial stop, and granted a remand permitting the State to, in essence, reopen the suppression proceeding in order to introduce new evidence regarding the initial stop. The purpose of the remand was not to correct a procedural error, but to afford the State an additional opportunity to do that which it previously failed to do—present evidence on the initial stop. This is not a case where the motions hearing judge simply did not rule, it is a case where the State, which had the burden of proof on the constitutionality of the initial detention at the suppression hearing, admits that it did not present sufficient evidence to support the constitutionality of the stop. Without taking additional evidence at a renewed hearing, the State obviously cannot meet its burden. Accordingly, unless we were to permit the introduction of additional evidence, a remand to the trial court would be merely pro forma for the trial court to sign an order finding the initial detention unconstitutional and suppressing the evidence emanating therefrom, because the Court of Special Appeals correctly determined that the State failed to present such evidence at the original hearing. If we were to affirm the mandate of the Court of Special Appeals, the State would have an opportunity to reopen the evidentiary stage of the suppression proceeding and bolster its case by presenting evidence that the State was required to present in the first instance.

### c. Remand with the Introduction of New Evidence

In the case at bar, the Court of Special Appeals improperly held that the State can present new evidence on

remand. Rule 8–604(d) does not permit such a remand for the purpose of introducing new evidence in cases where a party, like the State here, failed to sustain its burden of proof on an issue both raised in a motion to suppress and argued at the hearing on that motion. Because the State did not sustain this burden, allowing the State to introduce new evidence on remand, *i.e.* taking a second bite at the apple, is an improper application of Rule 8–604(d) and undermines the State's burden during the suppression proceedings in this case.[4]

There is a line of cases permitting the introduction of new evidence on remand, but the cases permitting new evidence on remand usually do so to correct some action taken by the trial court in a proceeding collateral to the trial itself which results in unfairness to a party. *See, e.g., Patrick v. State,* 329 Md. 24, 617 A.2d 215 (1992) (holding that reports of State experts who have conducted polygraph tests were discoverable and on remand allocated the burden to the State to show that the defendant was not prejudiced by prior non-disclosure); *Warrick v. State,* 326 Md. 696, 607 A.2d 24 (1992) (approving for the first time the use of an *in camera* hearing to determine whether the defendant had been prejudiced by non-disclosure of the confidential informant and remanded so the trial court could conduct such a hearing); *Stanley v. State,* 313 Md. 50, 542 A.2d 1267(1988) (remanding because the trial court erroneously failed to find a *prima facie* case of discrimination in the State's exercise of its peremptory challenges and had deprived the State of an opportunity to explain the reasons for its challenges); *Reid v. State,* 305 Md. 9, 501 A.2d 436 (1985) (ordering a limited remand for an evidentiary hearing because two favorable letters to the defendant had been improperly excluded from the sentencing hearing and new evidence related to those letters' authenticity was allowed); *Bailey v. State,* 303 Md. 650, 496 A.2d 665 (1985) (remand allowing the State to provide the defense with discovery materials which it had improperly withheld and the defense could decide whether a

---

4. The question necessarily arises, "What if the State fails to perceive and meet its burden at the reopened suppression proceeding?" Does it get another chance, and another chance?

motion to suppress should be filed on the basis of those statements); *Davis v. State,* 100 Md.App. 369, 641 A.2d 941 (1994) (remanding for an initial suppression hearing after the appellate court concluded that the trial court's failure to review the defendant's right to court appointed counsel was good cause to waive the thirty-day time limit for filing a motion to suppress). We have not found a case that has permitted the reopening of a suppression proceeding, after an appellate holding that the State has failed to meet its burden on a constitutional challenge, for the presentation of additional evidence where, on the facts and law, the motion to suppress should have been granted.

The facts and the procedural situation were different in *Tu v. State,* 336 Md. 406, 648 A.2d 993 (1994), relied upon by the Court of Special Appeals. *Tu* did not involve a remand for the reopening of a suppression proceeding for the presentation of additional evidence where the suppression proceeding had been completed, but involved a reversal based upon an improper denial of a motion to suppress, and a subsequent completely new trial. In respect to the items at issue, we noted:

> "We have shown that *Tu I* held that the State had failed to prove at the first suppression hearing that the plain view doctrine applied to items, beyond the scope of the warrant, that the court understood were seized at the hotel.... Thus, the circuit court, at the second suppression hearing, did not directly violate the precise holding of *Tu I,* at least as it applies to the custodial items.
>
> "At the second suppression hearing the court accepted the State's testimony that the custodial items were not seized at the hotel. Tu does not contend that the custodial items are subject to suppression if they may be considered to have been acquired from the Nevada authorities as described in the testimony at the second suppression hearing."

*Id.* at 417, 648 A.2d at 998.

Tu had originally moved to suppress the evidence on the mistaken belief that it had been improperly seized during the

execution of a search warrant for a hotel room. The State originally defended on its also mistaken belief that the items were properly seized in the hotel room, not under the warrant, but that the items were seized because they were in "plain view" in the hotel room during the execution of the warrant. The Court of Special Appeals reversed on the failure by the State to present "plain view" facts at the first suppression hearing, and remanded the case for a new trial. In *Tu I*, there was no remand to the trial court for it to reopen the initial suppression proceeding, requiring it to address an issue it had not previously recognized, and further requiring the trial court to allow the State to present new evidence at a reopened suppression proceeding. *Tu I* was completely reversed and remanded for a new trial, not for a reopened suppression proceeding. At the new trial, *Tu II*, Tu again moved to suppress the evidence on the basis that the Court of Special Appeals had held that there was insufficient evidence that the items had been in plain view during the search of the hotel room, and, thus, the issue was controlled by the "law of the case."

During the suppression proceeding in the new trial, it was developed that the items had not been seized during a search of the hotel room in the first instance, but had been otherwise obtained. We held that the "law of the case" did not control because the actual "place" of the search, and the actual manner of the obtaining of the evidence were different than the manner of search and the place searched pursuant to the warrant at issue in the suppression hearing at the original trial. Under those circumstances, we held that the State was not foreclosed from establishing the admissibility of the evidence at the subsequent trial. The *Tu* cases did not involve an appellate court's direction to a trial court to, in essence, reopen a suppression proceeding in the same case to permit the State another opportunity to prevail on a suppression motion that should have been granted to a defendant.

The intermediate appellate court in the case at bar noted the following language from *Tu*:

"[R]eversal for the erroneous denial of a motion to suppress does not, in and of itself, preclude any trial court reconsideration of the admissibility of the State's evidence that was the subject of the suppression motion, at least if the reconsideration presents a legal theory that was not ruled upon on the prior appeal. Further, facts that are relevant to applying that previously unadjudicated legal theory and that were not previously presented may be considered by the trial court, even if those facts were known to the State at the time of the original trial court ruling."

*Southern,* 140 Md.App. at 512–13, 780 A.2d at 1238 (quoting *Tu,* 336 Md. at 420, 648 A.2d at 999–1000).

The Court of Special Appeals went astray when it attempted to afford the State the opportunity to relitigate, in the same case, an issue it had failed to litigate and prove. *Tu* stands for the proposition that in a new trial after reversal, certain issues may be litigated, unless prohibited by appropriate "law of the case" restrictions.

■  At a new trial, a defendant may always file a new motion to suppress, and if the State opposes it, a defendant, *in appropriate circumstances* may avail himself of "law of the case" principles. Otherwise, it is a new motion, new hearing, new trial, and new decision.

The State, under the given facts of the present case, is attempting to get another chance, a "second bite at the apple," to present the evidence it should have presented at the initial suppression proceeding. If petitioner in this case, at the Motion to Suppress hearing, had failed to present any evidence in response to some position the State had adequately established, we normally would not allow petitioner a limited remand for the introduction of new evidence to try and bolster his case. What is required of the defendant in such circumstances is no less required of the State.

Furthermore, the Court of Special Appeals, by permitting the introduction of evidence on remand, departed from the practice of appellate courts to reverse the judgment in a case where the State has failed to sustain its burden of proof in a

motion to suppress. *See Stokes v. State,* 362 Md. 407, 765 A.2d 612 (2001); *Cartnail v. State,* 359 Md. 272, 753 A.2d 519 (2000); *Ferris v. State,* 355 Md. 356, 735 A.2d 491 (1999); *Turner v. State,* 133 Md.App. 192, 754 A.2d 1074 (2000); *Charity v. State,* 132 Md.App. 598, 753 A.2d 556 (2000).

This notion of not allowing the presentation of new evidence on limited remand is supported in Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* vol. 5, § 11.2(e), 82, fn. 238 (3d ed., West 1996), which states:

> "Such [a limited] remand is appropriate when the appellate court would otherwise be unable to decide the case because of an absence of findings of fact or conclusions of law. *State v. Wilson,* 218 Mont. 359, 708 P.2d 270 (1985). Upon remand, the responsibility of the lower court is to review the evidence and make necessary findings and conclusions, rather than to receive more evidence. *Ex parte Hergott,* 588 So.2d 911 (Ala.1991) (on remand because of uncertainty as to what record indicated about whether barn was within curtilage, it was error for trial court to receive new evidence by going to view the premises; court holds 'that Double Jeopardy Clause prevents the Court of Criminal Appeals from sending the issue back to the trial court for a second chance to supply on the record evidence sufficient to prove that the warrantless search fell within the "open-field" exception')."

*Cf. Hopkins v. State,* 661 So.2d 774 (Ala.Crim.App.1994) (holding that although the record before it left unanswered many questions, that court was not authorized to resolve those questions by remanding for another hearing because the State when presented with an opportunity to establish its case, failed to do so, and under the Double Jeopardy Clause it does not get a second chance).

### III.   Conclusion

The Court of Special Appeals sought to invoke Rule 8–604(d)(1) as authority to remand petitioner's case for the reopening of a suppression proceeding in order for new evidence to be introduced by the State and then for a new ruling

in that suppression proceeding; however, the intent of this rule and Maryland case law reviewing this rule do not provide a party with the opportunity to get a "second bite at the apple" in the same case, but instead, the rule attempts to permit a court to cure some judicial error that resulted in unfairness to a party. While remand is a right given to appellate courts under certain circumstances, it is not an applicable remedy in this case. During the suppression proceeding, petitioner adequately challenged the "stop and anything that flowed from it," putting the State on notice of its challenge. Nevertheless, the State proceeded to proffer no evidence as to the constitutionality of the initial detention. Petitioner's challenge to his initial warrantless detention placed the burden of proof on the State to establish the constitutionality of the detention. The State failed to meet its burden. The appropriate appellate response is a reversal with a new trial, not a remand for the taking of additional evidence in a reopened suppression proceeding in the same case.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR A NEW TRIAL CONSISTENT WITH THIS OPINION; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.**

RAKER, Judge, and WILNER, J., dissenting.

We respectfully dissent for two reasons. First, we believe that the issue decided by the Court—whether there was probable cause for the initial detention of petitioner—was not properly raised in the Circuit Court and that, as a result, there is no basis for either a reversal or a remand. Second, we believe that, even if one could find that the issue *was* raised, given the haphazard and thoroughly confusing manner in which it was raised, any failure of the State to respond to it and any failure of the trial court to recognize that the issue

was raised was excusable, and a limited remand to allow a reopening of the suppression hearing is a proper and lawful remedy.

The history of the case is important. On the morning of February 19, 2000, two convenience stores in Prince George's County—one on Auth Road and one on Old Branch Avenue, near the intersection with Kirby Road—were robbed within an hour of each other. Corporal Peton, a K–9 officer who responded to the Old Branch Avenue store, put his dog in a "tracking mode" and went to the rear of the store. The dog picked up a scent, led Peton across Kirby Road to the rear of a house, and alerted under a tree. Just before crossing the street, Peton saw petitioner jump from a hiding place and run into a wooded area. Petitioner was found under the tree. Officer Pippin, informed of the apprehension, brought three witnesses to the Old Branch Avenue robbery to observe petitioner. One positively identified him as the robber.

While this was occurring, Officer Greever observed an unoccupied Honda Accord parked in what he regarded as an "odd location" near the intersection of Old Branch Avenue and Kirby Road. He looked inside, saw a cash register drawer, and reported that finding to other officers. The car was towed to a police lot. The car was owned by one George Howsore, who had lent it to petitioner's girlfriend, Lisa Townsend. Ms. Townsend said that, on the evening before the robberies, petitioner had taken the car without her permission.

After the show-up identification, petitioner was taken to the hospital for treatment of dog bite wounds he suffered at the time of his apprehension. While at the hospital, two of the officers guarding him were discussing the car found near the scene of the Old Branch Avenue robbery when petitioner, who was not part of the conversation, blurted out that the car belonged to his girlfriend and that she had given him permission to use it. Following his treatment at the hospital, petitioner was taken to the police station where, after being given his *Miranda* warnings, he gave a statement that implicated him in the two robberies.

We recite these facts, most of which came out at trial rather than at the suppression hearing, only to make clear that, even if petitioner's initial apprehension and detention were to be regarded as an arrest rather than a *Terry* stop, there was, in fact, more than ample probable cause to support it. *See Terrell v. State*, 3 Md.App. 340, 239 A.2d 128 (1968).[1] Had the issue of probable cause for the detention been clearly presented at the suppression hearing, it is obvious from the record that the State could have produced more than enough evidence to sustain its burden on the issue.

Petitioner was indicted on March 21, 2000. On March 30, 2000, he filed a motion captioned ENTRY OF APPEARANCE, ELECTION FOR JURY TRIAL, MANDATORY MOTIONS, AND MOTION FOR DISCOVERY AND INSPECTION, in which he (1) demanded a jury trial, (2) requested 20 peremptory challenges on *voir dire*, (3) moved to dismiss the indictment, (4) requested a severance of his case from that of his co-defendant, (5) demanded a speedy trial,

---

1. We do not suggest that the apprehension and temporary detention, pending a show-up which occurred very promptly, was in fact an arrest requiring probable cause. We simply note that, even if it *was* an arrest, there clearly was probable cause to support it.

Moreover, it is arguable that the record of the suppression hearing contains sufficient evidence to support the stop and detention. Although not argued or quoted by any party or the Court of Special Appeals, the transcript from the suppression hearing does contain *some* evidence supporting the stop. Officer Richard Pippin was called by the State and testified to the circumstances surrounding the identification show-up that occurred close to the place of the robbery and within a few minutes of the crime. The following testimony was presented:

Q. Did you explain to Miss Pryor the reason that you were taking her to Wolverton Avenue?

A. That's correct.

Q. What did you tell her?

A. We had apprehended a suspect fitting the description of the person that robbed the 7 Eleven.

Ms. Pryor testified at the suppression hearing that she identified the man in police custody as the robber. The fact that the police apprehended a suspect in close proximity to the scene of the crime and one fitting the description of the person they believed to be the robber constitutes probable cause, or at the very least, reasonable suspicion to detain a person.

and (6) moved to suppress evidence. With respect to his request to suppress evidence, the motion simply read:

"3. Moves to suppress any and all evidence obtained by the State in violation of the defendant's rights as guaranteed by the 4th, 5th, 6th, and 14th Amendments to the Constitution of the United States and the Maryland Declaration of Rights."

The motion did not indicate what evidence the defendant wished to suppress or any factual basis upon which he was entitled to have it suppressed.[2]

In apparent response to his discovery request, the State sent to petitioner copies of documents and police investigative reports. On August 1, 2000, petitioner filed the same "omnibus" motion he filed in April, again without any specificity as to what he wished suppressed or the factual or legal basis for suppression.

On September 20, 2000, after empaneling and swearing in a jury, the court held a hearing on these motions, asking first "which motions are we taking up first?" Without objection or comment by defense counsel, the prosecutor responded "ID and then the statement." At petitioner's request, he was excluded from the courtroom, and the court then heard evidence relating to circumstances of the post-apprehension show-up, and, finding that the identifications were reliable, denied the motion to suppress the identification. At that point, defense counsel, noting that "the State is saying they had my client in custody and there was a stop by a K–9, and obviously the seizure of whatever they seized from him, and two statements, the statement to Detective Cheeks and the statement to Detective Arscott," announced that petitioner was seeking "to suppress the stop and anything that flowed from that." She added, "I believe evidence was seized from him when he was stopped by Officer Peton, I can't remember

---

**2.** The motion to dismiss the indictment assigned no reasons at all. Citing no facts or legal principles, it simply said, "[m]oves to dismiss the indictment."

how they—Peton, and his K–9, and Officer Burgess. So anything that was seized from that stop."

That, of course, gave the court no clue whatever as to the evidence petitioner sought to suppress, much less whether there was any basis for suppression. Counsel added:

"The defendant's statement to Officer Cheeks, which was memorialized in writing allegedly by Mr. Southern and also as it appears by Officer Cheeks. There's also an oral statement that was allegedly given to Corporal Arscott at the hospital. We're moving to suppress that. And there was a search of the vehicle. Officer—responded to the car, and Officer Stuehmeier seized it, and they are alleging my client had custody of that vehicle."

Upon that minor bit of clarification, petitioner returned to the courtroom and the State presented evidence regarding petitioner's time in custody, the statements he gave, and the seizure of the cash register drawer from the car with which petitioner had associated himself. At the conclusion of that evidence, both sides stated that they had no further evidence to offer, and the court heard argument. Defense counsel stated that she proposed "to re-argue with regard to the search and seizure and the stop, when they stopped the defendant, about the identification, and the statements of Detective Cheeks . . ." The identification issue, as noted, had already been resolved by the court, before petitioner returned to the courtroom.

At that point, of course, all of the evidence had been presented. Completely switching gears, defense counsel focused, for the first time, on the initial apprehension of petitioner. She said that, "with regard to the stop, the defendant should really be the starting point for everything. We really have no evidence. What we have is Officer Burkhalter, who did not participate in the stop of Mr. Southern, who indicated the description that was given was a white male, and he really didn't have anything further than that. I believe it was five-eight to five-ten." Continuing, she argued, "Other than that, the next thing we know is we have Mr. Southern stopped and

witnesses driving by. So I don't think the State has established probable cause—*I would therefore like you to suppress the identification based on that."* (Emphasis added). Counsel then argued that petitioner's statement regarding the car should be suppressed because it was the product of what she regarded as a custodial interrogation, and that the written statement given at the police station was involuntary. She ended her argument with the request "that the I.D. be suppressed because the stop was—."

The court interrupted before she completed that sentence and repeated the finding it had made earlier that the identification was proper, that the statements petitioner made were voluntary, and that the police properly impounded the vehicle and saw the cash box in open view. On those bases, it denied the motion to suppress. The final colloquy was as follows:

[DEFENSE COUNSEL]: And Your Honor, with regard to the oral statement and identification that flowed from the stop?

THE COURT: *You mean the oral statement when he said: It was my girlfriend's?*

[DEFENSE COUNSEL]: *Right.* (Emphasis added).

THE COURT: The Court finds specifically that was not as the result of any custodial interrogation, that he made that statement when the two other police officers were in fairly close proximity but not really in the same location as he was. And that does not run afoul of any 5th or 6th Amendment right because it wasn't a custodial interrogation. It was a statement that was made voluntarily by him, not in response to any question.

So, quite frankly, I wasn't aware that was your challenge on it. I didn't know that was the subject of your challenge. Because as I heard it, he wasn't answering any questions. So I deny the motion to suppress.

[DEFENSE COUNSEL]: Thank you, Your Honor."

On this record, petitioner complained in the Court of Special Appeals that the State "failed to prove that his initial stop was constitutional" because "[n]o evidence was adduced by the

State ... regarding the circumstances under which he originally came into police custody ... [and] there was no basis from which the court would have concluded that the initial stop and subsequent arrest of the appellant was legal." Though acknowledging that no such evidence was produced at the suppression hearing, the State argued that petitioner had failed to challenge the propriety of the initial stop and that the issue was, therefore, not properly presented. The Court of Special Appeals concluded otherwise but, because the matter was never ruled upon by the Circuit Court, it remanded the case "so that the court may rule upon the propriety of the initial stop."

We granted *certiorari* to determine whether, assuming the facts as presented by petitioner, that court erred in remanding in order to give the State "a second opportunity to introduce evidence supporting the legality of the stop." The majority, erroneously in our view, accepts that the issue was properly presented and concludes, as a result, that, as the State failed in its burden to establish the legality of the initial stop, it was inappropriate to afford the State a second opportunity to meet that burden.

It is clear to us that the question of whether the police had a lawful basis to detain petitioner was never properly presented to the trial court, and he, therefore, has waived any right to complain about it on appeal. *See* Maryland Rule 8–131(a) (stating that ordinarily, an appellate court will not decide any issue, other than a jurisdictional one, "unless it plainly appears by the record to have been raised in or decided by the trial court ...").

The real problem here was created by petitioner and the manner in which he proceeded in the Circuit Court. The sole reason that the State did not address probable cause for petitioner's arrest is because the State and the trial court were not aware that the legality of the stop was in issue at the suppression hearing. Defense counsel never told anyone prior to the conclusion of the hearing that the reason he was seeking "to suppress the stop and anything that flowed from

that" was because the stop lacked probable cause. The pretrial motions filed by petitioner and the transcript make clear that the trial court and prosecutor obviously were not aware that petitioner was contesting the legal basis to justify petitioner's detention. Not until after all of the evidence was in did defense counsel make any allusion to a problem with the initial detention, and even as to that, she limited her complaint to the blurt-out about the automobile. It is for that reason, and that reason only, that the State did not present the evidence on this issue to the trial court.[3]

Maryland Rule 4–252(a) lists certain issues that, if not raised in a pretrial motion within the time specified in subsection (b) of the Rule, are waived—a defect in the institution of the prosecution; a non-jurisdictional defect in the charging document; an unlawful search, seizure, interception of wire or oral communication, or pretrial identification; an unlawfully obtained admission, statement, or confession; and a request for joinder or severance of defendants or charges. It has become customary for defense counsel to raise some or all of those issues in a single "omnibus" motion, as was done here, and we have no problem with that practice. The Rule does not require the issues to be raised by separate, independent motions, and there is no reason to file separate motions when one will do.

The problem is with the sloppiness that sometimes surrounds and permeates those motions. Not infrequently, as here, they make only the most general allegations—without any specificity, and sometimes without any basis in fact—that the defendant's arrest was unlawful, that a confession was unlawfully obtained, that the defendant was subjected to an unlawful identification procedure, that evidence was obtained

---

3. It would be absurd to suggest that the State intentionally elected not to present evidence to justify petitioner's detention. The record suggests that no one in the courtroom believed that petitioner had any *credible* basis to contest the probable cause for the stop or detention of petitioner. Everyone proceeded upon that assumption and, therefore, the State presented no evidence to establish the legality of the detention.

unlawfully, that the defendant was denied the assistance of counsel, and that the defendant was denied various other, often unarticulated, Constitutional, statutory, or common law rights. On those bald, and often unsupported, allegations, the defendant seeks to dismiss the charging document, widespread discovery, severance of one kind or another, and the suppression of every piece of evidence that may be possessed by the State.

That kind of motion, whether it is in the form of an "omnibus" motion or one raising only one of the issues, is impermissible. Rule 4–252(e) requires a motion filed in Circuit Court to "state the grounds upon which it is made" and to be "accompanied by a statement of points and citation of authorities." [4] A similar requirement appears in the Federal Rules of Criminal Procedure, *see* Fed.R.Crim.P. 47, and probably in the criminal procedure rules of most States, and it is there for a reason. Whenever a court is asked to make a formal ruling, especially one as important as the rulings sought under Rule 4–252, it must be given the factual and legal basis upon which to make the ruling. Some of that, of course, need not, and should not, be stated in the motion itself, but may be supplied through evidence or argument presented at a hearing or that accompanies the motion, but the motion itself must fairly alert the court to the issue it needs to address. [5]

There is nothing strange or onerous about such a requirement. The Supreme Judicial Court of Maine observed in

---

**4.** Maryland Rule 4–252(e) provides as follows:

"A motion filed pursuant to this Rule shall be in writing unless the court otherwise directs, shall state the grounds upon which it is made, and shall set forth the relief sought. A motion alleging an illegal source of information as the basis for probable cause must be supported by precise and specific factual averments. Every motion shall contain or be accompanied by a statement of points and citation of authorities."

**5.** Some courts will not hold a suppression hearing unless the written motion alleges facts sufficiently definite, specific, and detailed to enable the court to conclude that a claim is presented. *See e.g., United States v. Ledesma,* 499 F.2d 36, 39 (9th Cir.1974).

*State v. Desjardins,* 401 A.2d 165, 169 (Me.1979) that "the suppression movant must articulate in his motion with sufficient particularity the specific reason on which he bases his claim ... so that the court will recognize the issue to be decided." The Supreme Court of California explained in *People v. Williams:*

> "A motion is an application to the court for an order. In general, the moving party must carry the initial burden of informing its opponent and the court of the specific basis for its motion. If the rule were otherwise, then the party opposing the motion would have to try to guess, and then refute, every possible basis for the motion, which would always be inefficient and would often produce arbitrary results. Similarly, when defendants move to suppress evidence ... they must inform the prosecution and the court of the specific basis for their motion."

20 Cal.4th 119, 83 Cal.Rptr.2d 275, 973 P.2d 52, 59 (1999) (citations omitted); *see also O'Neal v. United States,* 222 F.2d 411, 412 (D.C.Cir.1955) (stating that motion to suppress must identify the evidence that the defendant seeks to suppress); *Cummings v. People,* 785 P.2d 920, 923 (Colo.1990) (holding that motion to suppress should be adequately descriptive so the court and prosecution are on notice as to what is to be decided); *Best v. United States,* 582 A.2d 966 (D.C.App.1990); *State v. Johnson,* 16 Or.App. 560, 519 P.2d 1053 (1974) (requiring that defendant must give State as much notice as possible of the contentions it must be prepared to meet at the suppression hearing).

In most instances, this requirement of stating the "grounds upon which [the motion] is made" and points and authorities that specify the legal basis for the motion means more than simply alleging a violation of broad Constitutional provisions. *See People v. Mendoza,* 82 N.Y.2d 415, 604 N.Y.S.2d 922, 624 N.E.2d 1017, 1021 (1993). It means articulating a factual and legal basis for the relief requested. The motions filed in this case did not even come close to doing so. They did not state the grounds on which they were made and did not contain anything even resembling points and authorities. A motion to

suppress "any and all evidence obtained by the State in violation of the defendant's rights as guaranteed by the 4th, 5th, 6th, and 14th Amendments to the Constitution of the United States, and the Maryland Declaration of Rights" tells the court nothing about what evidence petitioner wished to suppress or the basis for any suppression. Faced with such a motion, the court could quite properly have denied it on that ground alone.

We are told, in defense, that the practice has developed, at least in some areas of the State, for the court and the State to accept such a hollow motion, filed solely to comply with the time deadlines of Rule 4–252, and to allow defense counsel, at or shortly before a hearing on the motion, to inform the prosecutor and the court more particularly what issues the defendant really is raising and what relief is sought. That practice is not in conformance with the "precise" rubric embodied in Rule 4–252(e) and is not to be condoned, but if the court chooses to excuse the procedural lapse and entertain the motion, it certainly becomes incumbent upon counsel, at *that* point, to make clear what the defendant is complaining about and what relief is being sought. In our view, that was not done, even at the hearing.

We have quoted much of the argument presented at the suppression hearing, for it demonstrates far better than any characterization of the proceedings how hidden was any complaint about a lack of probable cause to detain petitioner and how thoroughly confusing, and to a large extent misleading, was the articulation of the relief sought. Without objection by defense counsel, the issue was initially presented as one of the post-arrest identification show-up. At the request of defense counsel, petitioner was taken out of the courtroom, and substantial evidence was taken on the issue. The court then ruled that the identification was permissible, and everyone assumed that that issue had thus been resolved. Petitioner was brought back into the courtroom and the discussion turned to other issues—the various statements made by petitioner at the hospital regarding the automobile and later at the police station. Although at one point counsel announced

that she was seeking "to suppress the stop and anything that flowed from that," when pressed later about what she wanted suppressed because of the "stop," she made clear that it was limited to his statement at the hospital regarding the automobile. We have quoted that colloquy:

THE COURT: You mean the oral statement when he said: It was my girlfriend's?

[DEFENSE COUNSEL]: Right.

The court then ruled on that complaint, holding that the statement was essentially a "blurt" and was "not as the result of any custodial interrogation." As noted, the court expressed understandable surprise—"I wasn't aware that was your challenge on it"—but it addressed the complaint and rejected it. Counsel understood that a ruling had been made. She never indicated to the court that it misunderstood the nature of petitioner's complaint, but immediately responded, "Thank you, Your Honor."

That ruling was absolutely correct. On the evidence presented, petitioner's statement regarding the automobile was not the product of any kind of custodial interrogation, and there was utterly no basis for suppressing it. It is only with appellate afterthought that petitioner now seeks to expand his attack to include a complaint that the police had no probable cause to detain him and a demand that, by reason of that lack of probable cause, *all* evidence obtained as a result of that detention be suppressed. That broad attack, however, was never presented to the trial court—neither in the motion nor in argument on it.

Assuming that the suppression issue was raised properly, a limited remand to allow a reopening of the suppression hearing is a proper and lawful remedy. Rule 8–604(d) permits a limited remand and provides as follows:

"If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings, the Court may remand the case to a lower court. In the order remanding a case, the appellate

court shall state the purpose for the remand. The order of remand and the opinion upon which the order is based are conclusive as to the points decided. Upon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court."

This is an ideal case for a limited remand pursuant to Rule 8–604(d). *See Atkins v. State,* 254 Ga. 641, 331 S.E.2d 597, 599 (1985) (holding that although all crucial elements of test of valid consent were not established, reversal was not required; case remanded to trial court for new suppression hearing) (citing *Carpenter v. State,* 252 Ga. 79, 310 S.E.2d 912) (1984) (remanding case for in camera inspection of documents); *Pittman v. State,* 245 Ga. 453, 265 S.E.2d 592 (1980) (remanding case for *Jackson Denno* hearing).

The majority holds that a limited remand is inappropriate because the State failed to meet its burden and is not entitled to a second bite at the apple. *See* maj. op. at 20–21.[6] The majority recognizes that cases permitting the introduction of new evidence on remand are permitted to correct some action taken by the trial court in a proceeding that is collateral to the trial itself and results in unfairness to a party. *See* maj. op. at 21. In the instant case, the issue on remand is collateral to and not an integral part of the criminal trial and the purposes of justice will be advanced by permitting further proceedings.

There are several sound reasons underlying the "one bite at the apple" rule.[7] The philosophy underlying this rule includes the interest of finality and appreciation that repetitive motions waste scarce judicial resources and increase the costs of the

**6.** The majority ill-advisedly tosses in references to Double Jeopardy as a basis for rejecting limited remand. *See* maj. op. at 24. The Double Jeopardy Clause of the United States Constitution has nothing to do with this case.

**7.** Although reference to the "one bite at the apple" principle is absent from our cases, many other states discuss the notion. *See e.g., Boughton v. McAllister,* 576 N.W.2d 94, 96 (Iowa 1998); *Aice v. State,* 305 S.C. 448, 409 S.E.2d 392, 395 (1991); *Horne v. State,* 607 S.W.2d 556, 563 (Tex.Crim.App.1980) (Roberts, J., concurring).

judicial system. Moreover, by requiring the parties to present all the arguments on an issue at the same time, the court may comprehensively analyze the issue presented rather than doing so in a piecemeal fashion. The "one bite" rule means that a party is entitled to but one bite at the apple—but it presupposes that the party knows which apple to bite. *See Thomas v. State*, 517 So.2d 1285 (Miss.1987).

This is not a case of giving the State more than "one bite at the apple." This is a case in which the State should be given at least a bite at the apple. In this case, there is a strong competing interest between petitioner's right to have all the State's evidence presented at the initial suppression hearing and society's right to have guilty defendants convicted. For that reason, the "one bite at the apple" rule is not applicable and the State should not be barred from having one full bite at the apple.